# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479

---

| | |
|---|---|
| Caption in Supreme Court: | JANE DOE-3 *et al.*, Appellees, v. McLEAN COUNTY UNIT DISTRICT No. 5 BOARD OF DIRECTORS *et al.*, Appellants. |
| Docket No. | 112479, 112501 cons. |
| Filed | August 9, 2012 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where children were molested by a school teacher and damages for willful and wanton conduct were sought from the school district where he previously worked, there had been a duty on its part to accurately certify his employment record on his departure—complaint dismissal for lack of duty properly reversed. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Champaign County, the Hon. Michael Q. Jones, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. <br> Circuit court judgment reversed. <br> Cause remanded. |

| Counsel on Appeal | James C. Kearns and Tamara K. Hackmann, of Heyl, Royster, Voelker & Allen, of Urbana, for appellants McLean County Unit District No. 5 Board of Directors *et al.* |
| --- | --- |
| | Peter W. Brandt and John K. Kim, of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellant Dale Heidbreder. |
| | Ellyn J. Bullock, of Champaign, for appellees Jane Doe-3 and Julie Doe-3. |
| | Sean M. Britton, of Britton & Swann, LLC, of Charleston, for appellees Jane Doe-7 and Julie Doe |

| Justices | JUSTICE BURKE delivered the judgment of the court, with opinion. |
| --- | --- |
| | Chief Justice Kilbride and Justice Thomas concurred in the judgment and opinion. |
| | Justice Freeman specially concurred, with opinion. |
| | Justice Garman concurred in part and dissented in part, with opinion. |
| | Justice Karmeier dissented, with opinion, joined by Justice Theis. |

**OPINION**

¶ 1      At issue in this case is whether defendants owed plaintiffs a duty of care. The trial court dismissed plaintiffs' claims for willful and wanton conduct, finding defendants owed no duty to plaintiffs. The appellate court reversed and remanded for further proceedings. 409 Ill. App. 3d 1087. For the reasons that follow, we agree with the appellate court that plaintiffs have alleged a duty owed by defendants, but we do so on grounds other than those relied on by the appellate court.

¶ 2                      BACKGROUND

¶ 3      Plaintiffs, Jane Doe-3 and Jane Doe-7, were sexually abused by their teacher, Jon White, at Thomas Paine Elementary School in Urbana, Illinois. Prior to his employment at Thomas Paine, White was employed as a teacher in the McLean County school district at Colene Hoose Elementary School in Normal, Illinois. Plaintiffs, along with their mothers, Julie Doe-3, and Julie Doe-7, filed suit against White, the Urbana School District No. 116 Board of

Directors (Urbana), and individual administrators at Urbana,[1] as well as the defendants involved in this appeal—the McLean County Unit District No. 5 Board of Directors (McLean) and five individual administrators at McLean—Jim Braksick, Alan Chapman, Dale Heidbreder, Edward Heinemann, and John Pye (McLean administrators).

¶ 4    Jane Doe-3's second amended complaint and Jane Doe-7's amended complaint were filed in February 2009. Both complaints contain the same allegations against McLean and the McLean administrators. Plaintiffs alleged that White was employed as an elementary school teacher at Brigham Elementary School in Bloomington, Illinois, and Colene Hoose Elementary School in Normal, Illinois, during the 2002 through 2005 school years. Defendants Chapman and Pye were employed by the McLean County school district as the superintendent and assistant superintendent of Operations and Human Resources, respectively. Defendants Braksick and Heinemann were employed as principals, and Heidbreder was employed as an assistant principal, at Colene Hoose Elementary School.

¶ 5    Plaintiffs alleged that, at some time between 2002 and 2005, the McLean administrators acquired actual knowledge of White's teacher-on-student sexual harassment, sexual abuse, and/or sexual "grooming"[2] of minor female students. However, defendants never recorded these incidents in White's personnel file or employment record. In addition, defendants failed to make timely mandated reports of the abuse by White and failed to investigate parental complaints. Also, according to the complaint, during the 2004-05 school year, defendants disciplined White for "sexual harassment, sexual grooming, and/or sexual abuse" of minor female students. The discipline occurred in October 2004, and again in April or May 2005. White was "kept out of his classroom because of his teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse." In 2005, prior to the close of the 2004-05 school year, defendants entered into a severance agreement with White which concealed his sexual abuse of students. Also in 2005, defendants "created a falsely positive letter of reference for White" which concealed known sexual abuse of female students.

¶ 6    Plaintiffs further alleged that defendants "passed"[3] White to the Urbana school district while concealing his past sexual abuse by intentionally giving false information regarding White's employment to the Urbana school district. Plaintiffs alleged that, during White's

---

[1]The counts against White, Urbana, and the Urbana administrators are not at issue in this appeal.

[2]"Sexual grooming" is defined by the plaintiffs to mean "any and all verbal and/or physical acts that constitute the process of cultivating trust with a minor for the purpose of gradually introducing sexual abuse, which may include playing games and/or giving of candy, food, gifts, prizes or treats, and/or designation for special classroom treatment of a Minor and/or doing favors for a Minor."

[3]The complaints define "passing" as "a School District's conduct in passing a teacher who is known to have committed teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse to another School District without reporting, and while concealing, known prior teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse."

transition to Urbana in 2005, defendants falsified employment information about White on an Urbana school district "Verification of Employment Form" by stating that White had worked during the entire school year. This statement concealed the fact that White had been subject to disciplinary removal from his classroom twice during the 2004-05 school year and left before the end of the school year.

¶ 7    In August 2005, White was hired as a teacher at Thomas Paine Elementary School in the Urbana school district. Plaintiffs alleged that Urbana hired White "while relying on false information provided by McLean County School District." Plaintiff Jane Doe-3 was a student in White's first-grade class during the 2005-06 school year; plaintiff Jane Doe-7 was a student in White's second-grade class during the 2006-07 school year. Both plaintiffs were victims of sexual abuse by White during White's employment at Thomas Paine.

¶ 8    Both complaints allege that the McLean administrators, individually, and McLean, as *respondeat superior*, acted willfully and wantonly by providing false information on the employment verification form. The other counts based on different theories of law are not at issue in this appeal.

¶ 9    Defendants filed motions to dismiss plaintiffs' complaints pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010) (allowing combined motions to dismiss)). First, defendants contended, pursuant to section 2-615 (735 ILCS 5/2-615 (West 2010)), that plaintiffs' complaints should be dismissed because, among other reasons, the complaints failed to state a cause of action upon which relief could be granted. Specifically, defendants contended that plaintiffs' willful and wanton conduct claims failed to allege a viable legal duty on the part of defendants, and that plaintiffs' claims were precluded by the common law public duty rule.

¶ 10   Defendants also argued that plaintiffs' claims against the individual McLean administrators should be dismissed pursuant to section 2-619 (735 ILCS 5/2-619 (West 2010)) because those claims were barred by the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2010)).[4]

¶ 11   The trial court dismissed with prejudice all counts against the McLean defendants, finding that defendants owed no legal duty to plaintiffs. Even if a duty existed under the law, the court held that either the common law public duty rule or the Tort Immunity Act precluded any duty owed to plaintiffs. Plaintiffs' motions to reconsider were denied.[5]

---

[4]We note that defendants filed a joint motion in this court to strike plaintiff Jane Doe-3's entire statement of facts from her appellee brief. This motion was taken with the case. Our review of the record indicates that the violations of Supreme Court Rule 341 (Ill. S. Ct. R. 341(h)(6) (eff. July 1, 2008)) are minor and do not hinder our review of the case. Accordingly, we will not strike the entire statement of facts but will disregard any inappropriate argumentative statements. See *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 698 (2009).

[5]We note that, in our review of the dismissal of plaintiffs' complaints, we do not consider the so-called "Pye email," which was attached to plaintiffs' motion to reconsider, as the contents of the email were not made part of the complaints.

¶ 12    The appellate court reversed the trial court's judgment and remanded for further proceedings, finding that plaintiffs adequately alleged a duty on the part of defendants. 409 Ill. App. 3d 1087. The court held that defendants' act of "creating and sending" a letter of recommendation on behalf of White supported a duty based on the theory of either voluntary undertaking (Restatement (Second) of Torts § 324A (1965)), or negligent misrepresentation involving risk of physical harm (Restatement (Second) of Torts § 311 (1965)). *Id.* at 1097-99. The court further held that defendants owed a duty either to warn Urbana of White's conduct or to report White's conduct to the Department of Children and Family Services (DCFS). *Id.* Based on its findings, the appellate court reversed the trial court's dismissal of plaintiffs' actions.

¶ 13    This court allowed defendants' petitions for leave to appeal pursuant to Supreme Court Rule 315 (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)), and the appeals were consolidated.

¶ 14                                      ANALYSIS

¶ 15    The issue before us is whether the trial court properly dismissed plaintiffs' complaints based on its finding that defendants owed plaintiffs no duty. A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). A motion to dismiss pursuant to section 2-619 admits the legal sufficiency of plaintiffs' complaint, but asserts affirmative matter which defeats the claim. Review under either section 2-615 or section 2-619 is *de novo*. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005).

¶ 16    Under section 2-615, the critical question is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). In making this determination, all well-pleaded facts must be taken as true. *King*, 215 Ill. 2d at 11-12. A court should dismiss a complaint pursuant to section 2-615 only where no set of facts can be proved which would entitle the plaintiff to recovery. *Marshall*, 222 Ill. 2d at 429.

¶ 17                                    I. Duty of Care

¶ 18    As noted above, the appellate court reversed the trial court's dismissal of plaintiffs' complaints, finding that plaintiffs stated a cause of action based on defendants' willful and wanton conduct and that defendants owed plaintiffs a duty. Therefore, we first turn to that issue.

¶ 19    In the only count before us, plaintiffs allege that defendants acted willfully and wantonly when they "passed" White to the Urbana school district by misrepresenting White's employment record on a verification form. There is no separate, independent tort of willful and wanton conduct. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010) (citing *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274 (1994)). Rather, willful and wanton conduct is regarded as an aggravated form of negligence. *Krywin*, 238 Ill. 2d at 235 (citing *Sparks v. Starks*, 367 Ill. App. 3d 834, 837 (2006)). In order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence

-5-

claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injury. *Krywin*, 238 Ill. 2d at 225. In addition, a plaintiff must allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 28 (2004).

¶ 20    Thus, to determine whether dismissal was proper, we must determine whether plaintiffs alleged sufficient facts which, if proven, establish a duty of care owed to them by defendants. Whether a duty exists is a question of law for the court to decide. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). The standard of review on a question of law is *de novo*. *Krywin*, 238 Ill. 2d at 226.

¶ 21    It is axiomatic that " 'every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.' " *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 19 (quoting *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 373 (1990) (collecting cases)). Thus, where a defendant's course of action creates a foreseeable risk of injury, the defendant has a duty to protect others from such injury. *Id.*

¶ 22    The "touchstone of this court's duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall*, 222 Ill. 2d at 436 (citing *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002)). But the "relationship" between the plaintiff and defendant need not be a direct relationship between the parties. Rather, "relationship" is a shorthand description for the analysis of four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant. *Simpkins*, 2012 IL 110662, ¶ 18; *Marshall*, 222 Ill. 2d at 436-37. Any analysis of the duty element turns on the policy considerations inherent in the above factors, and the weight accorded each of the factors depends on the circumstances of the particular case. *Simpkins*, 2012 IL 110662, ¶ 18.

¶ 23    At the outset, it is important to clarify exactly what circumstances alleged in the complaints form the basis for finding a duty owed to plaintiffs. The appellate court held that defendants' duty arose from the following circumstances: (1) failing to warn Urbana of White's conduct; (2) failing to report White's conduct to authorities; and (3) creating and tendering a false letter of recommendation for White. According to the appellate court, these actions or omissions created the opportunity for White to commit further abuse at Urbana, which was reasonably foreseeable by defendants. 409 Ill. App. 3d at 1099. We disagree.

¶ 24    None of the circumstances relied on by the appellate court can form the basis for a duty in this case. First, plaintiffs do not allege that defendants had an affirmative duty to warn Urbana of White's conduct. Nowhere in the complaints do plaintiffs allege that defendants had an affirmative duty either to protect them from the criminal acts of a third party or to warn Urbana about White's conduct during his prior employment with the McLean school district. Indeed, plaintiffs concede that "Good Samaritan" liability is not at issue in this case.

In Illinois, an affirmative duty to aid or protect another against an unreasonable risk of physical harm arises only in the context of a legally recognized "special relationship." *Simpkins*, 2012 IL 110662, ¶ 20; *Iseberg v. Gross*, 227 Ill. 2d 78, 87-88 (2007). Plaintiffs have not alleged, nor can they allege, that any of the recognized special relationships apply to them.[6]

¶ 25    Similarly, with regard to the appellate court's holding that defendants had a duty to report White's conduct to authorities, the common law does not recognize an affirmative duty to act for the protection of another in the absence of a special relationship between the parties. See *Iseberg*, 227 Ill. 2d at 87-88. As noted above, no special relationship exists here.[7]

¶ 26    Finally, we reject the appellate court's finding that a duty to the plaintiffs arose from defendants' creation of a recommendation letter for White. Although the appellate court found that defendants voluntarily undertook to create and send a letter to Urbana endorsing White's ability to teach elementary school students, the complaints pled only that a letter of recommendation was *created*; they did not plead that a letter was *sent* to Urbana. If no recommendation letter was sent to, or received by, Urbana, the creation of that letter cannot form the basis for a duty on the part of defendants.

¶ 27    Nevertheless, we find that plaintiffs have alleged circumstances which do give rise to a duty owed by defendants in this case. These circumstances consist of defendants' act of misstating White's employment history on the employment verification form sent to Urbana. Plaintiffs allege that defendants created the risk of harm to them by falsely stating on an employment verification form that White had worked for the McLean school district during the entire 2004-05 school year. This apparently was not true. As alleged by plaintiffs, White was subject to disciplinary removal from his classroom twice during the school year, and his employment ended at some time prior to the end of the school year.

¶ 28    Defendants dispute that the above facts support a finding of a duty. They argue that any claim by plaintiffs based on a misrepresentation on the employment verification form is merely an attempt to "repackage" a nonviable claim for the tort of fraudulent misrepresentation or negligent misrepresentation, the elements of which plaintiffs have not properly alleged. The elements of a fraudulent misrepresentation claim are: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the person making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth

---

[6]Historically, courts have recognized four "special relationships"—common carrier-passenger, innkeeper-guest, business invitor-invitee, and voluntary custodian-protectee. *Iseberg*, 227 Ill. 2d at 88 (citing Restatement (Second) of Torts § 314A (1965)).

[7]To the extent that plaintiffs argue that defendants' alleged violation of the Abused and Neglected Child Reporting Act (325 ILCS 5/1 *et seq.* (West 2010)) provides a separate basis for liability by implying a private cause of action, we note that plaintiffs failed to raise this issue in the appellate court and, thus, have waived it. See *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 428-29 (2002) (where a case is brought to the supreme court from the appellate court, questions which were not raised and argued in that court will not be considered by the supreme court but will be treated as waived).

of the statements; and (5) damage to the other party resulting from such reliance. *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (1989). A claim for negligent misrepresentation has essentially the same elements as fraudulent misrepresentation, except that the defendant's mental state is different. *Id.* A plaintiff need only allege that the defendant was careless or negligent in ascertaining the truth of the statement, and that the defendant had a duty to convey accurate information to the plaintiff. *Id.* Defendants contend further that fraudulent or negligent misrepresentation, historically, has been treated as a purely economic tort which is available only for commercial or financial losses and not for personal injuries. See *Doe v. Dilling*, 228 Ill. 2d 324, 343-44 (2008).

¶ 29    As we pointed out in *Dilling*, however, "if the tort of fraudulent misrepresentation is not recognized for a certain fact pattern, this does not necessarily mean that a plaintiff is left without a remedy for his or her injuries, as other tort actions may be available." *Id.* at 344-45. See also *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 184-85 (2003) (misrepresentations, as descriptions of conduct, may give rise to a great number of causes of action other than fraudulent misrepresentation, including false imprisonment, defamation, malicious prosecution, interference with contractual relations, and intentional infliction of emotional distress); 3 Dan B. Dobbs, The Law of Torts § 663, at 641-43 (2001) (the terms "fraud," "deceit," and "misrepresentation" may be used, not as the name for a cause of action, but as a description of the facts used to establish legal liability for some other tort, such as negligence or battery). In the instant case, plaintiffs' claims are not based on the tort of fraudulent misrepresentation or negligent misrepresentation, but on willful and wanton conduct. Willful and wanton conduct requires plaintiffs to plead and prove the elements of negligence—duty, breach, proximate causation, and damages—as well as a deliberate intention to harm or a conscious disregard for plaintiffs' welfare. See *Krywin*, 238 Ill. 2d at 225; *Doe v. Chicago Board of Education*, 213 Ill. 2d at 28. Plaintiffs allege that defendants' misrepresentation itself is the conduct giving rise to a duty in a cause of action for willful and wanton conduct.

¶ 30    In finding a duty here, we begin with the well-settled proposition that every person owes to all other persons " 'a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act.' " *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992) (quoting *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 86 (1964)); see also *Karas v. Strevell*, 227 Ill. 2d 440, 451 (2008); *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 291 (2007). Whether defendants' misstatements on the verification form gave rise to a legally recognized duty to plaintiffs here depends upon the "relationship" between the parties, that is, the reasonable foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on defendants. See *Simpkins*, 2012 IL 110662, ¶ 18; *Krywin*, 238 Ill. 2d at 226.

¶ 31    In deciding reasonable foreseeability, we note that an injury is not reasonably foreseeable where it results from freakish, bizarre, or fantastic circumstances. *Washington v. City of Chicago*, 188 Ill. 2d 235, 240 (1999). Here, we cannot say, as a matter of law, that the injuries in this case were so bizarre or fantastic as to be unforeseeable by a reasonable person. By falsely stating that White taught a full school year, when in fact White's employment

ended prior to the end of the school year, defendants implied that the severance of White's employment was routine. At the time that Urbana hired White, it had no reason to believe that White's nonrenewal by McLean was the result of his misconduct. According to the allegations in plaintiffs' complaints, the McLean administrators were well aware of multiple instances of White's sexual grooming and abuse of his students. In light of defendants' awareness of White's conduct and their false statements on the employment form, we cannot say, as a matter of law, that the injuries suffered by plaintiffs were unforeseeable.

¶ 32 Other courts, when faced with similar facts, have held that the plaintiffs' injuries were reasonably foreseeable, supporting a duty on the part of the defendants. See, *e.g.*, *Randi W. v. Muroc Joint Unified School District*, 929 P.2d 582, 584 (Cal. 1997) (plaintiff's assault by school administrator was reasonably foreseeable by school districts who provided favorable recommendations for the administrator, omitting past instances of sexual misconduct involving students); *Davis v. Board of County Commissioners*, 987 P.2d 1172, 1179-80 (N.M. Ct. App. 1999) (former employer of a detention sergeant hired by a hospital in reliance on an unqualifiedly favorable employment reference has a duty to exercise reasonable care so as not to misrepresent the employee's record when, to do so, would create a foreseeable risk of physical injury to third parties); *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 290-91 (Tex. 1996) (local council who recommended scoutmaster, in light of information council had received about scoutmaster's alleged prior conduct with other boys, should have foreseen that it was creating an unreasonable risk of harm to scouts in another troop).

¶ 33 The second factor in our duty analysis is the likelihood of the injury. We find nothing in the alleged facts that would suggest that the injuries suffered by plaintiffs are too remote or unlikely as a matter of law. A truthful disclosure on the employment verification form could well have been a "red flag" to Urbana to investigate the circumstances of White's departure from McLean. Had Urbana been made aware of the discrepancy in White's prior employment with McLean, it is certainly possible that it would have investigated further and either not hired White or fired White before he abused the plaintiffs in this case. Furthermore, where a teacher who is known to have abused children is hired in a teaching position at another school, the likelihood that students at the next school will be abused by that teacher is within the realm of reasonable probability. See *People v. Rinehart*, 2012 IL 111719, ¶ 29 (noting risk of recidivism associated with sex offenders). Thus, we cannot say, as a matter of law, that plaintiffs' injuries were so remote or unlikely as to preclude a duty owed by the defendants.

¶ 34 The magnitude of defendants' burden of guarding against such injury, the third factor, would not be great. If defendants undertake to fill out employment forms, they must do so with reasonable care. It is not an undue burden to require an employer to accurately complete an employment form. Imposing this obligation is not so unreasonable and impractical as to negate the imposition of a legal duty. See *Krywin*, 238 Ill. 2d at 232-33. Finally, looking at the fourth factor, it is difficult to see how any adverse consequences could result from imposing such a slight burden on a school district.

¶ 35 Viewing all four factors as a whole, we conclude that plaintiffs have sufficiently alleged facts which support the finding that defendants owed plaintiffs a duty of care. Having

undertaken the affirmative act of filling out White's employment verification form, defendants had a duty to use reasonable care in ensuring that the information was accurate.

¶ 36    Our holding is further bolstered by the public policy in Illinois favoring the protection of children:

> "[T]his state has traditionally exhibited an 'acute interest' in the well-being of minors. Indeed, 'the welfare and protection of minors has always been considered one of the State's most fundamental interests.' *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 311 (1996). Long ago, this court acknowledged the paramount importance of ensuring the welfare of children, and others, who are least able to protect themselves:
>
> > 'It is the unquestioned right and imperative duty of every enlightened government, in its character of *parens patriae*, to protect and provide for the comfort and well-being of such of its citizens as, by reason of infancy, defective understanding, or other misfortune or infirmity, are unable to take care of themselves. The performance of this duty is justly regarded as one of the most important of governmental functions, and all constitutional limitations must be so understood and construed as not to interfere with its proper and legitimate exercise.' *County of McLean v. Humphreys*, 104 Ill. 378, 383 (1882)." *People v. Huddleston*, 212 Ill. 2d 107, 133 (2004).

¶ 37    "This public policy has led our courts to recognize that even parents' rights are secondary to the State's strong interest in protecting children when the potential for abuse or neglect exists." *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 312 (1996). Moreover, there is a specific public policy in this state, as evidenced by various statutes, which favors, in particular, the protection of children from sex offenders. See *Chicago Transit Authority v. Amalgamated Transit Union, Local 241*, 399 Ill. App. 3d 689, 697-98 (2010) (collecting citations). In *Huddleston*, 212 Ill. 2d at 137, this court noted, "Suffice it to say that the incidence of child molestation is a matter of grave concern in this state and others, as is the rate of recidivism among the offenders." See also *Chicago Transit Authority*, 399 Ill. App. 3d at 698 (citing *McKune v. Lile*, 536 U.S. 24, 33-34 (2002) (describing the risk of recidivism posed by sex offenders as "frightening and high")).

¶ 38    These public policy concerns for the protection of children, particularly from the dangers of sex offenders, weigh in favor of finding a duty under the facts of this case. Accordingly, we affirm the appellate court's judgment that defendants owed plaintiffs a duty. However, we do so on different grounds. We reverse the trial court's dismissal of plaintiffs' complaints and remand for further proceedings.

¶ 39                              II. Public Duty Rule

¶ 40    Defendants contend that, even if plaintiffs have alleged a viable legal duty, their claims are precluded by the common law public duty rule. The public duty rule provides that government officials owe no duty to protect individual citizens. *Moran v. City of Chicago*, 286 Ill. App. 3d 746, 750 (1997) (citing *Leone v. City of Chicago*, 156 Ill. 2d 33, 37 (1993),

and *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 522 (1990), *overruled in part on other grounds, McCuen v. Peoria Park District*, 163 Ill. 2d 125 (1994)). The rationale behind this rule is that "a municipality's duty is to preserve the 'well-being of the community' and that such a duty is 'owed to the public at large rather than to specific members of the community.' " *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 44 (1998) (quoting *Schaffrath v. Village of Buffalo Grove*, 160 Ill. App. 3d 999, 1003 (1987)). The public duty rule is of no moment in this case. As noted above, plaintiffs do not allege that defendants failed to protect them or that they owed any affirmative duty to do so.

¶ 41                                 III. Tort Immunity Act

¶ 42    Defendants also contend that their actions in this case are immunized under section 2-204 of the Tort Immunity Act. That provision states: "[e]xcept as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204 (West 2010). Section 2-204 provides immunity from vicarious liability claims. See, *e.g.*, *Payne for Hicks v. Churchich*, 161 F.3d 1030 (7th Cir. 1998) (holding that a sheriff could not be vicariously liable for the conduct of a deputy under section 2-204); *Clark v. City of Chicago*, 595 F. Supp. 482 (N.D. Ill. 1984) (holding that supervisors named only on *respondeat superior* grounds were immunized from liability under section 2-204); see also *Toney v. Mazariegos*, 166 Ill. App. 3d 399, 404 (1988) (noting, in *dicta*, that section 2-204 "has been construed as being intended to bar liability based on *respondeat superior*"). Plaintiffs do not claim that defendants are vicariously liable for the conduct of White, and thus section 2-204 is of no help to defendants.

¶ 43    By way of a single footnote, defendants also make passing mention of section 2-210 of the Tort Immunity Act, which states that "a public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation." 745 ILCS 10/2-210 (West 2010). Defendants' only observation with respect to this section is to point out that "[t]he Julie Doe Plaintiffs did not plead negligent misrepresentation and such claim would have been barred under 745 ILCS 10/2-10 of the Tort Immunity Act." Defendants are exactly right on this point—plaintiffs do *not* plead negligent misrepresentation. Rather, they plead willful and wanton conduct, which section 2-210 "unambiguously" does not immunize. See *Barnett v. Zion Park District*, 171 Ill. 2d 378, 391 (1996).

¶ 44    On this last point, we reiterate that, where a provision of the Tort Immunity Act contains no exception for willful and wanton conduct, we will not read one in. See *Ries v. City of Chicago*, 242 Ill. 2d 205, 222 (2011). However, as *Barnett* makes clear, the legislature may provide an express exception for willful and wanton conduct in one of two ways. It may do so positively, by stating expressly that the immunity provided does not extend to conduct that is willful or wanton. See, *e.g.*, 745 ILCS 10/2-202 (West 2010) ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."). Or, it may do so negatively, by stating expressly that the provided immunity applies only to conduct that is negligent. Such is the case with section 2-210, and this accounts for its inclusion in *Barnett*'s inventory of tort

immunity provisions that unambiguously limit an immunity to cover only negligence. *Barnett*, 171 Ill. 2d at 391.

¶ 45 Finally, we emphasize that our holding in this case is limited to finding, under the particular circumstances presented here, that the allegations in plaintiffs' complaints are sufficient to establish that defendants owed plaintiffs a duty of care. We express no opinion on whether defendants have breached their duty of care, whether defendants acted willfully and wantonly, and whether defendants' breach was a proximate cause of plaintiffs' injuries, which are factual matters for the jury to decide. See *Marshall*, 222 Ill. 2d at 444; *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995); *Moran*, 286 Ill. App. 3d at 755.

¶ 46                                                                  CONCLUSION

¶ 47 For the foregoing reasons, the judgment of the appellate court reversing the circuit court's dismissal of plaintiffs' complaints is affirmed, the circuit court judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

¶ 48 Appellate court judgment affirmed.

¶ 49 Circuit court judgment reversed.

¶ 50 Cause remanded.

¶ 51 JUSTICE FREEMAN, specially concurring:

¶ 52 Although I agree with the court's resolution of this case, I write separately to address two points.

¶ 53 As an initial matter, I wish to make clear that the duty in this case arises not from any statutory authority, but rather from the common law doctrine of negligence. Long ago, this court recognized that employers have a duty to hire employees who are not foreseeably likely to cause harm to another in the workplace. *Western Stone Co. v. Whalen*, 151 Ill. 472, 484 (1894). The care that is required is the care a reasonably prudent person would exercise in view of the consequences that might reasonably be expected if an incompetent, reckless, or unfit person was employed. *Id.*

¶ 54 The rationale espoused in *Whalen* continues to hold true today. Generally, Illinois recognizes a common law cause of action against an employer's negligently hiring someone it knew, or should have known, was unfit for the job to be filled and who created a danger of harm to a third person. See *Easley v. Apollo Detective Agency*, 69 Ill. App. 3d 920 (1979); *Fallon v. Indian Trail School, Addison Township School District No. 4*, 148 Ill. App. 3d 931 (1986). Inherent in this duty is the responsibility to make a reasonable investigation of potential employees. *Easley*, 69 Ill. App. 3d at 932.

¶ 55 Given the duty imposed on an employer in the hiring context, it is hardly a stretch for this court to impose, as it does today, on previous employers the duty to take reasonable care not to relate, when asked, inaccurate information regarding a former employee if that former employee presents a risk of harming a third party in the workplace. Such a duty is not akin

-12-

to an affirmative duty to inform. The previous employer does not have to shout out from the rafters all that it knows about its former employee. Rather, it is obliged to use reasonable care in passing along whatever information it chooses to give regarding the former employee's character when so asked if the employee presents a risk to third parties. In this case, the risk of harm was the sexual molestation of students. Defendants stated that White worked for them for the entire academic year. However, plaintiffs allege that this information was inaccurate because White's employment with McLean ended prior to the end of the academic year after White was removed from the classroom for disciplinary reasons relating to sexual molestation. Obviously, a termination in the employment relationship that occurs prior to the completion of the academic year for disciplinary reasons sends a different message to potential employers than does a termination of the relationship at the completion of the academic year.

¶ 56    Against this backdrop, defendants' assertion that plaintiffs' claim is, in reality, nothing more than a "repackaged" cause of action for fraudulent concealment or misrepresentation lacks merit. Plaintiffs do not allege that they were defrauded by defendants' conduct. This court has now twice explained that, although not every misrepresentation gives rise to an action sounding in fraud, misrepresentations themselves often play a large role in a variety of other torts. See *Doe v. Dilling*, 228 Ill. 2d 324, 344-45 (2008); *Bonhomme v. St. James*, 2012 IL 112393, ¶ 38 n.2. This case provides an apt example of the point made in these prior cases. It is for these reasons, along with those set forth in the court's opinion, that I conclude that defendants owed a duty to plaintiffs under the common law of negligence.

¶ 57    With respect to the public duty rule, this court has, on occasion, declined to consider the rule's viability where its application had no impact on the resolution of the case. See, *e.g.*, *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 509 (2006); *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335 (1998). And, in those cases, it was true that the rule, if it still exists, had no application to the facts at issue, a circumstance also present in this case.

¶ 58    I agree that the rule has no impact on this case, but I do so for all of the reasons explained in my special concurrence in *Calloway v. Kinkelaar*. I continue to hold to the views I expressed there. Because article XIII, section 4, of the Illinois Constitution of 1970 abolished all forms of governmental immunity except as provided for by the General Assembly, the judiciary's power to apply the public duty doctrine ceased to exist as of the ratification of our 1970 Constitution. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 336 (1995) (Freeman, J., specially concurring).

¶ 59    Since *Calloway*, I have not pressed the matter when it has arisen in respect for the court's invocation of its "prerogative to forgo the determination of issues unnecessary to the outcome of a case." *DeSmet*, 219 Ill. 2d at 509. However, Justice Karmeier's observation in his dissenting opinion (*infra* ¶ 114 (Karmeier, J., dissenting, joined by Theis, J.) (acknowledging "now might be the occasion to *clearly* pronounce the public duty rule dead or alive" (emphasis in original))) requires me to restate my views on this subject given the points I made about the public duty rule in *Calloway*.

¶ 60    After the abolishment of sovereign immunity and the codification of the Tort Immunity

Act, the public duty doctrine and its exception for special duties ceased to exist as legal bases to assess liability. Where the Tort Immunity Act is silent, a government entity might be liable for negligence. In determining whether a duty exists in any particular case where the Tort Immunity Act does not operate, the *considerations* that once drove operation of the public duty doctrine and the special duty exception may play a role in a court's duty analysis, but that is the extent of the continued viability of the doctrine and its exception.

¶ 61       Courts in other states have reached the same conclusion. For example, the Florida Supreme Court, in analyzing a similar contention under Florida law, recognized that the public duty rule "is a function of municipal sovereign immunity and not a traditional negligence concept which has meaning apart from the governmental setting." *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010, 1015 (Fla. 1979). As such, the court concluded that the rule's "efficacy is dependant of the continuing vitality of the doctrine of sovereign immunity." *Id.* In Florida, sovereign immunity no longer exists. *Id.* For that reason, the Florida Supreme Court found the public duty rule no longer valid. The New Mexico Supreme Court, in reaching the same conclusion, cited the growing trend in tort law against the continued vitality of the rule:

> "[T]he development in the law has been to abolish [the public duty rule] in those jurisdictions where the matter has been more recently considered or reconsidered. See *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982) ***; *Adams v. State*[, 555 P.2d 235 (Alaska 1976)]; *Martinez v. City of Lakewood*[, 655 P.2d 1388 (Colo. App. 1982)]; *Commercial Carrier Corp. v. Indian River County*[, 371 So. 2d 1010 (Fla. 1979)] ***; *Wilson v. Nepstad*, 282 N.W.2d 664 (Iowa 1979); *Brennen v. City of Eugene*, 285 Or. 401, 591 P.2d 719 (1979); *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 247 N.W.2d 132 (1976). '[T]he trend in this area is toward liability. ***' [Citation.] Those courts have demonstrated a reasoned reluctance to apply a doctrine that results in a duty to none where there is a duty to all." *Schear v. Board of County Commissioners*, 687 P.2d 728, 731 (N.M. 1984).

See also *Natrona County v. Blake*, 81 P.3d 948, 954 (Wyo. 2003) (acknowledging the public duty rule was "in essence a form of sovereign immunity and viable when sovereign immunity was the rule. The legislature has abolished sovereign immunity in this area [thus] [t]he *** rule, if it ever was recognized in Wyoming, is no longer viable."). Given my previous views on this subject, in addition to the dissent's acknowledgment of it, I am hopeful that the issue can be addressed squarely in the future.


¶ 62       JUSTICE GARMAN, concurring in part and dissenting in part:

¶ 63       Analyzing this case under the principles of *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, the majority correctly concludes that the defendant had a duty. In *Simpkins*, we held that a duty analysis begins with the threshold question of whether the defendant, by his alleged act or omission, contributed to a risk of harm to a particular plaintiff. If so, the court must weigh the four factors to determine whether a duty ran from the defendant to the plaintiff. *Simpkins*, 2012 IL 110662, ¶ 21. We also recognized that a duty may exist when one of the four special relationships exists between the parties. *Simpkins*, 2012 IL 110662,

¶ 20.

¶ 64    I agree with the majority that a duty of ordinary care arose under the circumstances alleged by the plaintiffs. Such a duty would arise only when several circumstances are present: (1) an inquiry is received from a potential employer, (2) the former employer knows or has reason to know that the former employee who is the subject of the inquiry engaged in the sexual molestation of a child while he was employed there in a position that put him in contact with children, and (3) the former employee is being considered for another position that would again put him in contact with children. These circumstances, rather than any conduct by defendants, inform the duty analysis. The alleged tortious conduct constitutes the alleged breach of the duty. Whatever information defendants provided or Urbana relied on, the elements of breach and causation are not yet at issue.

¶ 65    However, I write separately because I believe the majority's discussion of section 2-210 of the Tort Immunity Act (745 ILCS 10/2-210 (West 2010)) is both premature and inadequate. The majority opinion briefly addresses the possible application of section 2-210 of the Tort Immunity Act (the Act) to plaintiffs' claims and finds that section 2-210 is not applicable because the language of the section excludes willful and wanton conduct from tort immunity. However, I believe the court should not address this argument, as it was mentioned only in a footnote in one of the briefs. Section 2-210 was not raised as an affirmative defense by defendants in their motions to dismiss in the circuit court. The motions to dismiss cited various other provisions of the Act, but not section 2-210, and therefore anything this court has to say about section 2-210 would be premature. This case will be remanded to the circuit court as a result of the court's resolution of the duty issue. The parties may amend their pleadings. Defendants may raise an immunity defense based on section 2-210. The question will be addressed in due course and, if it reaches this court, will have the benefit of fully developed arguments by the parties, both at the circuit court and appellate court levels. This court should be reluctant to reach out beyond the scope of the instant appeal to decide a potentially dispositive issue without such developed arguments made by the parties. Therefore, I would find any substantive discussion by the court of section 2-210's applicability to be premature.

¶ 66    However, if section 2-210 is to be addressed, a complete and thorough analysis is warranted. The majority describes the allegedly tortious conduct as a willful and wanton misrepresentation. Therefore, the possibility exists that section 2-210, which specifically applies to negligent misrepresentation, might apply to immunize defendants from plaintiffs' claims.

¶ 67    Prior to this court's decision in *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11 (1959), governmental entities were immune from tort liability under the doctrine of sovereign immunity. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 505 (2006). *Molitor* abolished sovereign immunity and in response the legislature enacted the Local Governmental and Governmental Employees Tort Immunity Act in 1965. *DeSmet*, 219 Ill. 2d at 505. The ratification of the Illinois Constitution in 1970 validated both *Molitor* and the Act, and article XIII, section 4, of the Illinois Constitution made the legislature the ultimate authority in determining when local units of government are immune from liability. *DeSmet*, 219 Ill. 2d at 506.

¶ 68    "[T]he purpose of the Act is to protect local public entities and public employees from liability arising from the operation of government." *DeSmet*, 219 Ill. 2d at 505. However, because the Act was enacted in derogation of the common law, it must be strictly construed against the public entities involved. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 380 (2003). Thus, municipalities are liable in tort to the same extent as private parties unless a specific provision of the Act applies. *Van Meter*, 207 Ill. 2d at 368-69.

¶ 69    The provisions of the Act differ in the degree of immunity they provide to the government. Some provisions expressly exclude willful and wanton conduct from immunity. See, *e.g.*, 745 ILCS 10/4-105 (West 2010) ("Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care."). Other provisions clearly provide blanket immunity for all conduct by immunizing liability for any injury, without exception. See, *e.g.*, 745 ILCS 10/4-106(b) (West 2010) ("Neither a local public entity nor a public employee is liable for: Any injury inflicted by an escaped or escaping prisoner."); *Ries v. City of Chicago*, 242 Ill. 2d 205, 227 (2011).

¶ 70    There is a third category of provisions, however, that does not fall into either of the types listed above: a provision that does not immunize liability for "any injury," makes no mention at all of willful and wanton conduct, and contains a modifying term such as "negligent" in describing the conduct to be immunized. See, *e.g.*, 745 ILCS 10/2-207 (West 2010) ("A public employee is not liable for an injury caused by his failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than that of the local public entity employing him, for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety."). When such wording is used, one could read the provisions as immunizing only negligent conduct, thereby implying an exception for willful and wanton conduct. This is a question of statutory interpretation to be decided as a matter of law. *Adames v. Sheahan*, 233 Ill. 2d 276, 308 (2009).

¶ 71    The provision at issue in this case, section 2-210, is just such a provision. Section 2-210 states: "A public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-210 (West 2010).

¶ 72    Our earlier case law, specifically *Doe v. Calumet City*, held that section 2-202 of the Act provided a willful and wanton exception to the immunities otherwise provided by the Act. *Doe v. Calumet City*, 161 Ill. 2d 374 (1994). Section 2-202 states that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2010). In *Doe*, this court held that, by invoking section 2-202, plaintiffs could escape any statutory immunities granted municipalities and their employees by proving willful and wanton conduct. *Doe*, 161 Ill. 2d at 389-90. Section 2-202's exception for willful and wanton

conduct prevailed over the blanket immunities of sections 4-102 and 4-107.

¶ 73     In *Ries*, we noted that while "*Doe* held section 2-202 provided a general willful and wanton exception to the immunities provided by the Act and rejected those decisions that held that blanket immunities provided by individual sections of the Act prevail over section 2-202," subsequent cases "held that if a section of the Tort Immunity Act [did] not provide for a willful and wanton exception, then none exist[ed]." *Ries*, 242 Ill. 2d at 226-27. Stating that it was time for this court to acknowledge the obvious, we held that *Doe* was "no longer good law" and that "we will not read a willful and wanton exception into section 4-106(b)." *Ries*, 242 Ill. 2d at 227. In other words, if a section of the Act does not expressly provide an exception to immunity for willful and wanton conduct, then none exists. *Ries*, 242 Ill. 2d at 227. In light of *Ries*, willful and wanton conduct does not provide a general exception to the otherwise blanket, absolute immunities found throughout the Act. See Michael D. Bersani, *The Demise of the General Willful and Wanton Exception to the Tort Immunity Act*, 99 Ill. B.J. 348, 370 (2011).

¶ 74     The majority cites this court's decision in *Barnett v. Zion Park District*, 171 Ill. 2d 378 (1996), for the proposition that section 2-210 "unambiguously" does not immunize willful and wanton conduct. The majority writes that:

> "[A]s *Barnett* makes clear, the legislature may provide an express exception for willful and wanton conduct in one of two ways. It may do so positively, by stating expressly that the immunity provided does not extend to conduct that is willful or wanton. See, *e.g.*, 745 ILCS 10/2-202 (West 2010) ('A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.'). Or, it may do so negatively, by stating expressly that the provided immunity applies only to conduct that is negligent. Such is the case with section 2-210, and this accounts for its inclusion in *Barnett*'s inventory of tort immunity provisions that unambiguously limit an immunity to cover only negligence. *Barnett*, 171 Ill. 2d at 391." *Supra* ¶ 44.

¶ 75     *Barnett* concerned whether a prior version of section 3-108(b) of the Act immunized willful and wanton conduct. The old section at issue in *Barnett* stated:

> "(a) Except as otherwise provided by this Act and subject to subdivision (b) neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property.
>
> (b) Where a local public entity or public employee designates a part of public property to be used for purposes of swimming and establishes and designates by notice posted upon the premises the hours for such use, the entity or public employee is liable only for an injury proximately caused by its failure to provide supervision during the said hours posted." 745 ILCS 10/3-108 (West 1992).[8]

---

[8]The current version of section 3-108 states:
> "(a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is

¶ 76        The plaintiff argued that section 3-108 did not establish unconditional immunity, but rather provided an exception for willful and wanton conduct when read in conjunction with section 2-202. This court rejected that argument, finding that section 2-202 was not a general exception to all the other immunities established by the Act, and that section 2-202 provided immunity only where the public employee was negligent while actually engaged in the execution or enforcement of a law, which was not the situation in *Barnett*. *Barnett*, 171 Ill. 2d at 390-91. The plaintiff also argued that, section 2-202 aside, the Act itself generally does not establish unconditional immunity, but rather provided a general exception for willful and wanton conduct. The court rejected that argument as well, writing:

> "The plain language of section 3-108 is unambiguous. That provision does not contain an immunity exception for willful and wanton misconduct. Where the legislature has chosen to limit an immunity to cover only negligence, it has unambiguously done so. See 745 ILCS 10/2-202, 2-210, 3-106, 3-109(c)(2), 4-105, 5-103(b), 5-106 (West 1992). Since the legislature omitted such a limitation from the plain language of section 3-108, then the legislature must have intended to immunize liability for both negligence and willful and wanton misconduct. [Citations.]" *Barnett*, 171 Ill. 2d at 391-92.

¶ 77        That is the extent of the *Barnett* court's analysis of the matter. There is no mention of "positive" or "negative" exclusions of willful and wanton conduct. In what amounts to *dicta*, *Barnett* provided a string citation using the signal "See" that listed various subsections as examples of where the legislature had "unambiguously" "chosen to limit an immunity to cover only negligence." *Barnett*, 171 Ill. 2d at 391-92. There was no discussion of the individual sections cited or of the "negative" way in which the legislature could exclude willful and wanton conduct where the actual text of the section makes no mention of such conduct, but rather refers to the immunized conduct as "negligent." Instead, upon a reading of the various sections listed, it becomes clear that section 2-210 alone might qualify for the "negative" category. All of the other sections listed (sections 2-202, 3-106, 3-109(c)(2), 4-105, 5-103(b), and 5-106) contain in their text express exclusion of immunity for willful and wanton conduct and would thus fall into the first type of Act provision that expressly excludes willful and wanton conduct from immunity. While one could argue that the court in *Barnett* implicitly or indirectly endorsed a "negative" or implied exclusion of willful and wanton conduct, the opinion does not directly confront the issue of whether labeling immunized conduct as negligent necessarily excludes willful and wanton conduct from

___

guilty of willful and wanton conduct in its supervision proximately causing such injury.

(b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury." 745 ILCS 10/3-108 (West 2010).

immunity where there is no mention in the section's text of such conduct. Further, there were no other sections falling into the negative category, such as section 2-207, listed. Section 2-207 at the time contained the same language it does today. The "See" *dicta* string cite in *Barnett* was by no means an exhaustive list.

¶ 78 Our appellate court, however, has directly addressed whether describing immunized conduct as negligent automatically excluded willful and wanton conduct from immunity. In *Ware v. City of Chicago*, 375 Ill. App. 3d 574, 582 (2007), the appellate court had to decide whether section 2-207 of the Act immunized alleged willful and wanton acts in the context of a porch collapse in Chicago. Section 2-207 states:

"A public employee is not liable for an injury caused by his failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than that of the local public entity employing him, for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." 745 ILCS 10/2-207 (West 2010).

¶ 79 In finding that section 2-207 gave the city blanket immunity, even for willful and wanton conduct, the court wrote:

"Plaintiffs argue that sections 2-105 and 2-207 expressly immunize only negligent conduct and therefore the conduct alleged in their complaint, willful and wanton, is not protected. We are reminded that the legislature has sole authority to extend, limit, and condition existing immunities. See *DeSmet*, 219 Ill. 2d at 510. Indeed, the supreme court cautioned that the plain language of an immunity demonstrates the legislature's intent, such that the legislature will unambiguously immunize negligent conduct, but not willful and wanton conduct, where intended. *DeSmet*, 219 Ill. 2d at 514; *Village of Bloomingdale*, 196 Ill. 2d at 491. When no such express exception for willful and wanton conduct appears in the provision, the supreme court has concluded that the legislature intended to provide unqualified immunity. *DeSmet*, 219 Ill. 2d at 514; *Village of Bloomingdale*, 196 Ill. 2d at 491. In support of their argument, plaintiffs erroneously read 'negligent inspection' out of context and fail to acknowledge that no express exception for willful and wanton conduct appears in the language of section 2-105 or 2-207 of the Tort Immunity Act. *DeSmet*, 219 Ill. 2d at 510. Accordingly, despite plaintiffs' contention that the City engaged in willful and wanton conduct, those provisions applicable to the instant case, including sections 2-103 and 2-205 of the Tort Immunity Act, immunize the City from liability under the circumstances." *Ware*, 375 Ill. App. 3d at 582-83.

¶ 80 The *Ware* decision was cited with approval by this court in *Ries*. See *Ries*, 242 Ill. 2d at 221 ("The appellate court applied the same reasoning in *Ware v. City of Chicago*, 375 Ill. App. 3d 574 (2007), to conclude that sections 2-105 [citation] and 2-207 [citation] of the Tort Immunity Act *** prevailed over section 2-202. Sections 2-105 and 2-207 do not contain exceptions for willful and wanton misconduct, and thus the plaintiffs could not rely on section 2-202's exception for willful and wanton misconduct when sections 2-105 and 2-207 were applicable."). A recent First District case, *Hess v. Flores*, 408 Ill. App. 3d 631 (2011), reaffirmed *Ware* and found that "sections 2-105 and 2-207 grant the City immunity

for allegations of willful and wanton conduct." *Hess*, 408 Ill. App. 3d at 647.

¶ 81　In this case, section 2-210 falls into that above described third-category: the immunized conduct is "negligent misrepresentation" or "provision of information" and there is no mention in the text of "willful and wanton" conduct.

¶ 82　This court has repeatedly held over the previous decade that if a provision of the Act does not contain an exception for willful and wanton conduct, then no such exception exists. *Ries*, 242 Ill. 2d at 227; *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 491-94 (2001); *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 347 (1998); *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 196 (1997); *Barnett*, 171 Ill. 2d at 391. Where the legislature has chosen to limit an immunity to cover only negligence, it has *unambiguously* done so. *Barnett*, 171 Ill. 2d at 391. Exceptions for willful and wanton conduct may not be read into the Act provisions that do not contain them. *Ries*, 242 Ill. 2d at 225. That is exactly what the majority is doing here through its "negative" reading of the provision.

¶ 83　Numerous provisions in the Act that contain language to the effect that the defendant is "entitled to immunity unless such act constitutes willful and wanton conduct." There are far fewer sections, such as sections 2-207 and 2-210, that describe immunized conduct as "negligent." Following *Barnett*, the legislature amended section 3-108 to immunize public entities and employees from liability for supervising activities on public property "unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision." 745 ILCS 10/3-108(a) (West 2010). The legislature did not amend the provision to read "negligent supervision." Instead, so as to be *unambiguous* that willful and wanton conduct was not immunized, it inserted into the text the specific words "willful and wanton conduct" so that there would be no confusion that such conduct was not entitled to immunity under the Act.

¶ 84　Further evidence in support of the legislature's intent is found in section 5-106. Section 5-106 states:

> "Except for willful or wanton conduct, neither a local public entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of a person to a medical facility." 745 ILCS 10/5-106 (West 2010).

¶ 85　This provision clearly identifies the immunized conduct as "negligent," yet it also contains an explicit exception for willful or wanton conduct. Under a negative reading, the description of the immunized conduct as "negligent" should have been enough to indicate that *only* negligent conduct, not willful or wanton conduct, was immunized. The legislature did not do that, however. Rather, so as to be unambiguously clear as to what conduct was immunized, the legislature explicitly stated in the text of the provision that willful or wanton conduct was not covered.

¶ 86　Further, under the definitions section of the Act, willful and wanton is defined thusly:

> "[A] course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the

safety of others or their property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210 (West 2010).

¶ 87    The legislature's use, in the last sentence of section 1-210, of the words "where a 'willful and wanton' exception is incorporated into any immunity under this Act," shows that when it means to exclude willful and wanton conduct from immunity, it explicitly says so. The willful and wanton definition does not say "and this definition shall also apply where the legislature extends immunity only to negligent conduct." Rather, the definition makes clear that it applies where the legislature has specifically incorporated an exception for willful and wanton conduct into the text of an act provision. The definitions in the Act are "the law" and must be applied like any other section of the Act. "It is well established that when a statute defines the terms it uses, those terms must be construed according to the definitions contained in the act." *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240, 244 (1998).

¶ 88    Section 2-210 is very similar to section 2-207, which was at issue in the *Ware* and *Hess* cases. I find the analysis of our appellate court in *Ware* to be persuasive. As with section 2-207, I would find that the majority has read "negligent misrepresentation" out of context, and has failed to acknowledge that no express exemption for willful and wanton conduct appears in the language for section 2-210 of the Act. See *Ware*, 375 Ill. App. 3d at 583. When no such express exception for willful and wanton conduct appears in the provision, I would conclude that the legislature intended to provide unqualified immunity. *DeSmet*, 219 Ill. 2d at 514.

¶ 89    Section 2-210 is also comparable to another Act provision, section 2-106, which states:

"A local public entity is not liable for an injury caused by an oral promise or misrepresentation of its employee, whether or not such promise or misrepresentation is negligent or intentional." 745 ILCS 10/2-106 (West 2010).

¶ 90    While section 2-106 is concerned with public entities and addresses only *oral*, not written, misrepresentations, it is still persuasive evidence that the legislature intended for the immunity to cover both negligent and willful and wanton misrepresentations. It makes no sense for the legislature to provide broader protection to a public entity for a misrepresentation than it provides to that entity's employee, who is acting in the scope of his employment, for essentially the same conduct. Accordingly, in this instance I would find the legislature intended section 2-210 to provide unqualified immunity for even a willful and wanton misrepresentation.

¶ 91    However, even if the majority is correct and the use of "negligent" in a section of the Act excludes willful and wanton misrepresentation from immunity, section 2-210 also contains immunity for the "provision of information." Arguably, the conduct at issue more closely resembles "provision of information" than any sort of "negligent misrepresentation." *Supra* ¶¶ 6-8. The conduct at issue was defendant's provision of information to Urbana regarding White's employment. Section 2-210 of the Act immunizes a public employee acting in the scope of his employment for an injury caused by his negligent misrepresentation *or the provision of information* either orally, in writing, by computer or any other form of library

material. 745 ILCS 10/2-210 (West 2010). The question then becomes whether the word "negligent" modifies *only* misrepresentation or both misrepresentation and "provision of information." If the only conduct in section 2-210 that "negligent" refers to is misrepresentation, then if the conduct at issue is simply "provision of information," blanket immunity applies and willful and wanton provision of information would be immunized.

¶ 92    The primary objective in statutory interpretation is to give effect to the intent of the legislature, and the most reliable indicator of the legislature's intent is the language of the statute, given its plain and ordinary meaning. *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009). When determining a statute's meaning, the statute should be read as a whole, with all relevant parts considered. *Gardner*, 234 Ill. 2d at 511. Further, as noted above, when interpreting a provision of the Tort Immunity Act, because the Act is in derogation of common law, it should be strictly construed against the governmental entity claiming immunity. *Van Meter*, 207 Ill. 2d at 380.

¶ 93    Here, the use of "or" clearly indicates "negligent misrepresentation" and "the provision of information" are meant as two separate courses of conduct. It should be noted that "negligent misrepresentation" is a term of art referring to a specific theory of tort liability. For example, if one were to write "negligent misrepresentation or fraud," the adjective "negligent" would not be seen to modify the noun "fraud."

¶ 94    In this case, "or" is more properly construed in its disjunctive, rather than conjunctive, sense, because the use of "or," in its ordinary sense, "marks an alternative indicating the various members of the sentence which it connects are to be taken separately." *People v. Frieberg*, 147 Ill. 2d 326, 349 (1992). If the legislature intended for "negligent" to modify both "misrepresentation" and "provision of information" it would have included the term "negligent" immediately before "provision of information." To read the section in any other way would invite confusion. Therefore, if the conduct at issue is provision of information, then there is no "negligent" modifier relating to the conduct.

¶ 95    Thus, if the alleged tortious conduct at issue is defendants' provision of information to Urbana, then such conduct may be fully immunized under the Act, whether it be negligent or willful and wanton. As the legislature chose not to qualify immunity for "provision of information" with either the modifying term "negligent" or by excluding "willful and wanton provision of information," conduct falling under that section of the Act may be accorded blanket immunity.

¶ 96    Further, section 2-107 of the Act provides blanket immunity to public entities for the provision of information. Section 2-107 states:

> "A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-107 (West 2010).

¶ 97    This is a clear statement of absolute immunity for public entities for the provision of information that results in an injury. The immunity granted is unqualified and would certainly apply to willful and wanton provisions of information. Read in conjunction with section 2-210, the legislature has clearly intended to provide blanket immunity to public

entities and their employees (acting within the scope of their employment) for the provision of information that results in an injury.

¶ 98    In sum, I would find the discussion of section 2-210 of the Act to be premature. It is a mistake to decide an issue that has not been properly brought to us. It was not raised in the circuit court and was not fully briefed by the parties, whether at the appellate court or in this court. However, if the court does address the issue, I believe, based on my research and analysis, that there are good and viable arguments to be made that section 2-210 of the Act applies to this case. I would remand the case for repleading and allow for the parties to raise the application of section 2-210 so that the lower courts can determine whether it applies to bar the cause of action.

¶ 99    JUSTICE KARMEIER, dissenting:

¶ 100   Today the majority has, in effect, judicially recognized a new cause of action. "Passing," as defined by the plaintiffs, is "a School District's conduct in passing a teacher who is known to have committed teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse to another School District without reporting, and while concealing[,] known prior teacher-on-student sexual harassment and/or sexual grooming and/or sexual abuse." The McLean County defendants may be liable in tort, according to the majority, even though: (1) defendants had no "affirmative" duty to warn Urbana of White's conduct; (2) defendants had no *common law* duty to report White's conduct to the authorities; and (3) there are no allegations that Urbana ever *asked* defendants whether there had been complaints about White's conduct, and defendants never *denied* that there had been complaints or abuse—material deficiencies in plaintiffs' pleadings that affect the requirements that they allege facts demonstrating a duty and a breach of that duty which proximately caused the plaintiffs' injuries. The majority has created this new cause of action on a framework of skeletal complaints that do not adequately state a cause of action, fabricating the cause out of whole cloth, while utilizing inadequate or incomplete analyses of several major issues. In the end, the majority reaches a decision which may well be popular, given the facts and circumstances of this case and a laudable desire to protect children, but one that is not well-grounded, one that disregards pertinent statutory authority, and one that appears to do violence to precedent. Because I believe the majority's analyses of important issues in this case are deficient and otherwise incomplete, I must respectfully dissent.

¶ 101   The majority finds, without adequate analysis, or with no analysis at all: (1) that—without discussion of considerations overriding "waiver"—plaintiffs have "waived" the argument "that defendants' alleged violation of the Abused and Neglected Child Reporting Act (325 ILCS 5/1 *et seq.* (West 2010)) provides a separate basis for liability by implying a private cause of action" (*supra* ¶ 25 n.7); (2) that this case is not about fraudulent or negligent misrepresentation—a contrary finding would have subjected the outcome to the proscriptive holding of *Doe v. Dilling*, 228 Ill. 2d 324 (2008)—while in the end seemingly *accepting* plaintiffs' argument "that defendants' misrepresentation itself *is* the conduct giving rise to a duty in a cause of action for willful and wanton conduct" (emphasis added) (*supra* ¶ 29); (3) though defendants had no "affirmative" duty to warn Urbana of White's conduct,

nor a *common law* duty to report White's conduct to the authorities, the judiciary may impose a duty on the defendants to accurately report the precise number of days White did *not* work in McLean County, in response to an Urbana questionnaire *limited to that subject*, because an accurate accounting *might* have prompted Urbana to conduct the relevant hiring inquiry it apparently neglected; (4) that a discussion of the public duty rule is unnecessary simply because plaintiffs' attorneys did not couch their complaints in terms of a duty to "protect," terminology which would have highlighted the rule's potential application and suggested a basis for dismissal; (5) that section 2-204 of the Tort Immunity Act does not apply to the facts of this case, despite seemingly applicable language, and *no* mention therein of either "vicarious liability claims" or "liability based on *respondeat superior*," because courts whose decisions are not binding upon us have limited its application to those contexts. I will address the analysis of each issue in this order of presentation.

¶ 102    At the outset, I have to ask why we are *not* discussing the provisions of the Abused and Neglected Child Reporting Act (325 ILCS 5/1 *et seq.* (West 2010)), a comprehensive legislative enactment intended to "protect" children, like these plaintiffs, and one which addresses matters so integral to the questions before this court. Had the McLean County defendants simply complied with the Act's provisions, the alleged abuse in this case would not have occurred. White would not have gone on to teach elsewhere. The 2004 version of the Act would be applicable here, though I believe amendments to the Act are relevant insofar as they clarify the legislature's original intent. The Act imposes a statutory duty on school personnel to make a report to the Department of Children and Family Services when they have "reasonable cause to believe a child known to them in their professional or official capacity may be an abused child." 325 ILCS 5/4 (West 2004). A knowing and willful violation of section 4's reporting requirement constitutes a criminal offense. 325 ILCS 5/4 (West 2004). In addition to this long-standing statutory duty to report—which plaintiffs *repeatedly* allege the McLean County defendants violated—section 4 of the Act now addresses the exchange of critical information between school districts. That section provides as follows:

> "[I]f an employee of a school district has made a report or caused a report to be made to the Department under this Act involving the conduct of a current or former employee of the school district and a request is made by another school district for the provision of information concerning the job performance or qualifications of the current or former employee because he or she is an applicant for employment with the requesting school district, the general superintendent of the school district to which the request is being made must disclose to the requesting school district the fact that an employee of the school district has made a report involving the conduct of the applicant or caused a report to be made to the Department, as required under this Act. Only the fact that an employee of the school district has made a report involving the conduct of the applicant or caused a report to be made to the Department may be disclosed ***." 325 ILCS 5/4 (West 2010).

¶ 103    Both the current and the 2004 versions of the Act grant immunity from liability for those who, "in good faith," report or disclose information as required. The 2004 grant of immunity, for those who participated in the Act's reporting requirements, was unqualified. 325 ILCS

5/9 (West 2004). The legislature has since *excepted* willful and wanton misconduct from this grant of immunity. 325 ILCS 5/9 (West 2010). Under both versions, school superintendents have access to the Department's records of reports pursuant to section 11.1(a)(11) of the Act. 325 ILCS 5/11.1(a)(11) (West 2010); 325 ILCS 5/11.1(a)(11) (West 2004).

¶ 104    I agree with the majority that the protection of children from sexual abuse is a public policy consideration of utmost concern. Obviously, the Act evinces the legislature's recognition of that fact, and stands as the General Assembly's principal attempt to address the very circumstances which put these plaintiffs at risk. This court has often acknowledged, in relation to the judicial branch, the General Assembly, which speaks through the passage of legislation, occupies a superior position in determining public policy. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 55-56 (2011); *Vitro v. Mihelcic*, 209 Ill. 2d 76, 88-89 (2004); *Wakulich v. Mraz*, 203 Ill. 2d 223, 232 (2003) (declining to recognize social host liability for the provision of alcohol to minors). In *Wakulich*, this court stated:

> " 'The General Assembly, by its very nature, has a superior ability to gather and synthesize data pertinent to the issue. It is free to solicit information and advice from the many public and private organizations that may be impacted. Moreover, it is the only entity with the power to weigh and properly balance the many competing societal, economic, and policy considerations involved. ***
>
> This court, on the other hand, is ill-equipped to fashion a law on this subject that would best serve the people of Illinois. We can consider only one case at a time and are constrained by the facts before us.' " *Wakulich*, 203 Ill. 2d at 232 (quoting from *Charles v. Seigfried*, 165 Ill. 2d 482, 493-94 (1995)).

¶ 105    We are concerned here with the actions and potential liability of governmental officials and entities, matters to which the legislature has often spoken. The General Assembly enacted the Abused and Neglected Child Reporting Act for the express purpose of protecting children; yet, as the majority appears to acknowledge (*supra* ¶ 25 n.7), the legislature did not see fit to explicitly provide for a private cause of action for violation of the Act's provisions. Appellate courts, state and federal, have concluded there is no indication in the Act that the legislature intended a violation of the statute to give rise to an express or implied private cause of action for failure to report. See *Varela v. St. Elizabeth's Hospital of Chicago, Inc.*, 372 Ill. App. 3d 714 (2006); *Doe 1 v. North Central Behavioral Health Systems, Inc.*, 352 Ill. App. 3d 284 (2004); *Cuyler v. United States*, 362 F.3d 949 (7th Cir. 2004). The court in *Cuyler* observed: "It may be significant that since being enacted [almost 30 years ago], the abuse-notification statute has been amended several times, any one of which would have provided an occasion for plugging in a damages remedy had there been legislative sentiment for such a remedy; evidently there was not." *Cuyler*, 362 F.3d at 955.

¶ 106    Perhaps because a discussion of the statute was perceived as an impediment to the majority's analysis, the majority declines to speak to the legislature's intent or the Act's provisions, much less address whether a private cause of action should be implied, finding the issue "waived." However, we have repeatedly stated that we may look beyond considerations of waiver in order to maintain a sound and uniform body of precedent. *Halpin v. Schultz*, 234 Ill. 2d 381, 390 (2009); *Harshman v. DePhillips*, 218 Ill. 2d 482, 514 (2006);

*In re Madison H.*, 215 Ill. 2d 364, 371 (2005). In *Collins v. Lake Forest Hospital*, 213 Ill. 2d 234, 239 (2004), this court stated:

> "This court has long held that waiver is a limitation on the parties, not on this court. *Hux v. Raben*, 38 Ill. 2d 223, 224 (1967). At this time we choose to address the issue of a health care provider's duty under the Act because it is critical to the development of a sound body of precedent concerning the proper interpretation, and thus implementation, of legislation concerning vital care and treatment decisions for patients lacking decisional capacity, including the termination of life-sustaining procedures."

¶ 107    Like those in *Collins*, it would seem that the interests at stake here should command this court's attention and at least merit a discussion of what the legislature intended when it enacted a law that has such a direct bearing upon the circumstances before us.

¶ 108    We, of course, are not bound by the holdings of our state and federal appellate courts on this issue. I do not mean to suggest that we should adopt their reasoning or result. What I *do* suggest is that a discussion of the Act would provide a more straightforward means to address the issue of duty and the circumstances that gave rise to this case. " 'A tort has been defined as a breach of a noncontractual legal duty owed to the plaintiff, the source of which may be a statute as well as the common law.' " *People v. Brockman*, 143 Ill. 2d 351, 372 (1991) (quoting *Hopkins v. Powers*, 113 Ill. 2d 206, 213 (1986) (Goldenhersh, J., dissenting, joined by Simon, J.)). A tort duty may be inferred from a statute intended to protect human life or property. *People ex rel. Department of Labor v. Valdivia*, 2011 IL App (2d) 100998, ¶ 12; *Rommel v. Illinois State Toll Highway Authority*, 405 Ill. App. 3d 1124, 1128 (2010). This would appear to be such a statute, intended to protect past, as well as potential, victims of child abuse. Perhaps an analysis of the Act's provisions and objectives would yield a result more credible than the one the majority has reached: where the McLean County defendants are *not* liable for failure to disclose the pertinent information regarding White's alleged abuse, but they are potentially liable for failing to disclose information that could, "possibly," *lead* the negligent Urbana officials to the material information. This is, in effect, a duty to report misconduct by inference, and it is not surprising that the majority cites no other examples of it. If it *is* the case, as has been suggested in the discussion of this matter, that "circumstances, rather than any conduct by defendants, inform the [common law] duty analysis," are we to simply ignore the egregious conduct that *gave rise to* those circumstances? If we addressed *that* alleged conduct directly—which is clearly violative of a statutory duty—proponents of the majority's strained duty finding would not be compelled to argue that *any* "inquiry *** received from a potential employer" in this situation—even one that does not address the risk of harm (of which the common law imposes no "affirmative" duty to warn)—is sufficient to give rise to a duty. In any event, I believe a discussion of the Act is necessary if the court is to reach a responsible and reasoned result in this case.

¶ 109    Next, one has to ask how the majority can so summarily reject defendants' contention that plaintiffs' claim is really a "repackage[d]" cause of action for fraudulent concealment or misrepresentation, by simply shifting the focus of the discussion away from those torts and transmuting the claim into some generic cause that is not subject to the requirements or

-26-

limitations of either. See *supra* ¶ 28. I will make only a single observation with respect to the majority's treatment of our precedent in *Doe v. Dilling*: If that holding is so easily circumvented, as the majority purports to have demonstrated here, then that case retains little or no significance going forward—notwithstanding our recent suggestion otherwise in *Bonhomme v. St. James*, 2012 IL 112393. If the plaintiff in *Dilling* had only known, she could have couched her complaint in the language of simple negligence or characterized *her* cause as an "action for willful and wanton conduct," avoiding the longstanding rule applied to her in that case. Why would a plaintiff ever bring an action for misrepresentation when he or she can simply call it something else?

¶ 110    With regard to the third point set forth above, concerning the majority's duty analysis, the majority acknowledges that the McLean County defendants had no *affirmative* duty to warn Urbana of White's conduct, nor a *common law* duty to report White's conduct to the authorities. *Supra* ¶¶ 24-25. In this regard, the majority recognizes, in Illinois, "an affirmative duty to aid or protect another against an unreasonable risk of physical harm arises only in the context of a legally recognized 'special relationship,' " and no such relationship is, or could be, alleged here. *Supra* ¶ 24. Yet, even though there is no "special relationship" between the defendants and the plaintiffs that would give rise to an *affirmative* duty to warn Urbana of White's conduct—indeed there is no "direct relationship" at all (see *supra* ¶¶ 22, 30)—and even though Urbana never *asked* defendants about that seemingly important and, unfortunately, routine area of concern, the majority finds that the "relationship" between defendants and students in another school district is nonetheless sufficient to impose a duty upon defendants to accurately report the precise number of days White taught in his final year with the McLean County school system.[9] This, the majority in effect suggests, would have safeguarded the plaintiffs from harm by *tacitly* warning Urbana to conduct a better investigation than it did before hiring White. As critical as the number of days misreported are to this backdoor analysis, the number of days White was not in a McLean County classroom—be it 3, 30, or more—is still, even at this juncture, not specified in the factual allegations of plaintiffs' complaints. "Illinois is a fact-pleading jurisdiction" (*Simpkins*, 2012 IL 110662, ¶ 26) requiring that pleadings "contain specific allegations of fact from which *** necessary or probable inference[s]" may be drawn (*Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 457 (1989)). In order to sufficiently plead willful and wanton conduct, a plaintiff must allege facts demonstrating a duty of defendant and a breach of that duty which proximately caused the plaintiff's injury. See *Mieher v. Brown*, 54 Ill. 2d 539, 541 (1973); *Taylor v. Bi-County Health Department*, 2011 IL App (5th) 090475, ¶ 47; *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 125 (1995). Plaintiffs' failure to specify the number of misreported days at issue renders their pleadings insufficient to demonstrate *either* a duty or a breach proximately causing their injuries. However, more to the point, it

---

[9]It is unclear from the majority's analysis whether the McLean County defendants had an affirmative duty to fill out the employment verification form, and if such a duty existed, from whence it arose. If there was no affirmative duty to fill out the form, and the McLean County defendants' actions were entirely voluntary, then the majority's analysis should include a discussion of the parameters of the voluntary-undertaking doctrine.

affects two critical factors of the duty analysis conducted by the majority: foreseeability of the injury and the likelihood of injury.

¶ 111    After rejecting the argument that this case is really about fraudulent or negligent misrepresentation, the majority frames the question before this court as follows: "Whether defendants' misstatements on the verification form gave rise to a legally recognized duty to plaintiffs ***." *Supra* ¶ 30. The majority appears to acknowledge that an assessment of the foreseeability of injury, and the likelihood of injury, must necessarily account for the defendants' *contemplated* conduct, which, by the time of the law suit, translated into the conduct *complained of*, as well as the reactive conduct of any other parties involved, *i.e.*, the Urbana defendants. Irrespective of the merits of this analytical template, my discussion hereafter approaches the issue as the majority has framed it.

¶ 112    The majority accepts the premise that the likely actions of Urbana are critical to any analysis of foreseeability and likelihood of injury. With regard to the former, section 311 of the Restatement (Second) of Torts is instructive. That section provides in pertinent part that "[o]ne who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in *reasonable reliance* upon such information, where such harm results *** to such third persons as the actor should expect to be put in peril by the action taken." (Emphasis added.) Restatement (Second) of Torts § 311(1)(b) (1965). Was it reasonable, and foreseeable, that Urbana would rely on a form verifying days worked as the *sole* indicator of White's character and his conduct prior to the time he was hired? That is the factual basis that supports the majority's imposition of a duty—and the majority does not even address the problematic question of whether breach was sufficiently pleaded. I would note the majority's hesitation to assert that it is "likely" Urbana would have "investigated further and either not hired White or fired White" had it been aware of the "discrepancy" in the reported days White worked, and the majority's preference for the weaker phrase, "it is certainly possible." See *supra* ¶ 33. Many things are "possible"; however, courts of this state have held that "[t]he creation of a legal duty requires *more than a mere possibility* of occurrence." (Emphasis added.) *Cunis v. Brennan*, 56 Ill. 2d 372, 375-76 (1974); see also *Dorge v. Martin*, 388 Ill. App. 3d 863, 868 (2009); *Bartelli v. O'Brien*, 307 Ill. App. 3d 655, 660 (1999).

¶ 113    So what is the "foreseeability" or "likelihood" of injury based on an inaccurate accounting of the number of days White worked in his final year with the McLean County school system? As noted, the *number of days* involved in the inaccurate reporting has to be part of any realistic assessment. Although the majority fails to acknowledge this, it would obviously make a difference if the defendants failed to report 3 days' absence from the classroom, as opposed to, say, 100. In the former instance, would there be the "red flag" to which the majority refers? See *supra* ¶ 33. Highly unlikely. However, even ignoring for the moment the absence of fact-pleading as to the number of days reported—or not reported—what about the likelihood that *any* omission would have affected Urbana's investigation of White, with resultant action taken to prevent injury to the students under its care? The answer would seem to be, again, unlikely. My bases for that conclusion are: (1) Urbana hired White before it received any report outlining the days White worked for McLean County; (2) apparently, the caliber of Urbana's investigation was such that its

administrators never asked the McLean County defendants the question any responsible administrators would have asked: Has this individual been accused, or guilty, of any impropriety? (Urbana's verification of employment form does not address that issue at all); and (3) according to Jane Doe-3's own pleadings, Urbana did nothing during the years White was in its employ notwithstanding that one of its teachers knew about White's misconduct in McLean County as early as December 2005, and it received numerous complaints about White's misconduct while employed in Urbana. Yet, it is suggested that an unspecified over-reporting of White's days in McLean County classrooms would have made a difference? Seen in this light, the choice of the word "possible" is understandable. The majority's duty analysis fails to address these considerations and, in that respect, is deficient in my opinion.

¶ 114    I will next address the majority's treatment of the argument that the common law public duty rule applies in this situation. To begin with, the abbreviated treatment of this issue assumes that the public duty rule has continued viability. See *supra* ¶¶ 39-40. That assumption is inconsistent with language in this court's recent opinion in *Harris v. Thompson*, 2012 IL 112525, ¶ 16, implying otherwise. This court *explicitly* questioned the viability of the rule in *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 508-09 (2006), while ultimately determining that it was unnecessary to resolve the question because a provision of the Tort Immunity Act applied. Here, the majority finds provisions of the Tort Immunity Act *inapplicable*, so it would appear that now might be the occasion to *clearly* pronounce the public duty rule dead or alive. Appellate panels—including the appellate panel in this case (409 Ill. App. 3d at 1095-96)—continue to recognize the validity of the rule (see *Hess v. Flores*, 408 Ill. App. 3d 631, 639 (2011) ("[I]n the absence of a decision from our supreme court to the contrary, it remains clear that the public duty rule continues to play a role in the determination of governmental tort liability."); *Green v. Chicago Board of Education*, 407 Ill. App. 3d 721, 726 (2011) (discussing the public duty rule in the context of a suit against the Chicago Board of Education); *Taylor v. Bi-County Health Department*, 2011 IL App (5th) 090475 (holding, under the public duty rule, a county health department did not owe any individual duty to require that a child be provided with pneumococcal conjugate vaccine). Under the circumstances, it would seem that the court should speak to this issue.

¶ 115    The majority dismisses the argument that the public duty rule applies—an argument that was accepted by the circuit court as the principal basis for dismissal—with two sentences: "The public duty rule is of no moment in this case. As noted above, plaintiffs do not allege that defendants failed to protect them or that they owed any affirmative duty to do so." *Supra* ¶ 40. First, that statement ignores plaintiffs *repeated* allegations that the defendants violated their duty to report White's conduct pursuant to the provisions of the Reporting Act, which, *inter alia*, is clearly intended to protect children like the plaintiffs from abuse. See 325 ILCS 5/4 (West 2010). Moreover, why *would* the plaintiffs' attorneys couch their complaints in terms that could potentially subject their clients to dismissal pursuant to the public duty rule? If this action is not about an alleged failure to protect the plaintiffs from harm, then what *is* it about? In *Simpkins*, this court recognized "if a course of action creates a foreseeable risk of injury, the individual engaged in that course of action has *a duty to protect* others from such injury." (Emphasis omitted and added.) *Simpkins*, 2012 IL 110662, ¶ 19. Here, the

course of action allegedly contemplated and ultimately engaged in is the misrepresenting or misreporting of days White taught. According to the majority, it was foreseeable that the failure to accurately report the number of days White taught in the McLean County school system would put the plaintiffs at risk of injury. Thus, the *accurate* reporting of days taught would have *protected* the plaintiffs from the risk of injury. The majority holds that the defendants had a duty to do just that—report the days White taught. For the reasons stated, I fail to see how a duty to protect is not implicated in this case; consequently, a discussion of the viability of the public duty rule is warranted.

¶ 116    In addition, I believe the majority's treatment of section 2-204 of the Tort Immunity Act is also deficient and incomplete. Section 2-204 provides: "[e]xcept as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204 (West 2010). The majority summarily disposes of this statute—which the circuit court also found applicable—by noting that courts, whose decisions are not binding on us, have applied it to cases involving "vicarious liability claims" and "liability based on *respondeat superior*." *Supra* ¶ 42. In a single sentence, the majority concludes: "Plaintiffs do not claim that defendants are vicariously liable for the conduct of White; and thus section 2-204 is of no help to defendants." *Id*.

¶ 117    To say that section 2-204 applies, and has been applied, in the context of "vicarious liability claims" and "liability based on *respondeat superior*" obviously does not preclude its application in other contexts. Therefore, the majority's "analysis," such as it is, does not dispose of the issue. As this court recently observed in *Ries v. City of Chicago*, 242 Ill. 2d 205, 215-16 (2011):

> "In interpreting a provision of the Tort Immunity Act, as with any statute, our primary goal is to ascertain and give effect to the intention of the legislature. *DeSmet*, 219 Ill. 2d at 510. We seek that intent first from the plain language used in the statute, and if that language is clear and unambiguous, we are not at liberty to depart from the language's plain meaning. *Id*."

Here, it is alleged that defendants, acting within the scope of their employment, misreported the days White actually worked for the McLean County school system; thereafter, plaintiffs were allegedly injured by the acts of "another person," *i.e.*, White. By its plain language, the statute would arguably apply. Section 2-204 contains no language limiting its application to the context of vicarious liability claims or liability based on *respondeat superior*; neither is mentioned therein. Whether or not this court ultimately decides that this section applies to facts such as these, the majority's analysis is deficient on this point.

¶ 118    Before closing, I would note, notwithstanding the majority's deficient analysis with respect to section 2-204 of the Tort Immunity Act, and the lack of any analysis with regard to the Reporting Act, one could well argue that, in addition to supplying the pertinent duty for our purposes, the Reporting Act might also resolve the immunity question if we were to conduct the analysis under its provisions. Section 9 of the 2004 Reporting Act appeared to grant unqualified immunity—civil and criminal—to those who, "in good faith," *participated* in the Act's reporting scheme. 325 ILCS 5/9 (West 2004). The legislature has since clarified

that those who engage in "willful and wanton misconduct" are excepted from this grant of immunity. 325 ILCS 5/9 (West 2010). One could certainly argue, if the legislature intended to *deny* immunity in the latter instance for those who *participate* in the Act's reporting scheme, the legislature most certainly did not intend to *grant* immunity, in cases of willful and wanton misconduct, to those who *totally disregard* the Act's reporting requirements, those who are subject to criminal prosecution. That would make no sense. It seems to me a viable argument could be made that the Reporting Act is the comprehensive statutory scheme that should be applied in this situation and that the question of immunity should be decided by reference to its provisions. See generally *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 346-48 (2008).

¶ 119　　Because the majority's analyses do not adequately address the issues before this court, or the bases for dismissal in the circuit court, I cannot subscribe to the majority opinion. Like Justice Garman, I would remand this cause to the circuit court. I would give the plaintiffs an opportunity to replead with greater specificity, if they can, and the parties, and the circuit court, an opportunity to address issues raised, but not adequately resolved, in this appeal.

¶ 120　　JUSTICE THEIS joins in this dissent.