2025 IL App (2d) 250038-U
No. 2-25-0038
Order filed December 5, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JANE DOE, Individually and as Mother and Next Friend of Minor-Doe, a Minor, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 24-LA-98 |
| | ) | |
| BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT 300, and ADAM FAULKNER, | ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Board of Education of Community Unit School District 300, Defendant-Appellee). | ) ) | Kevin T. Busch, Judge, Presiding. |

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Vicarious liability claim against a school board based on the misconduct of a teacher toward a student did not state a claim of willful and wanton misconduct because plaintiff did not properly allege that the school board had constructive notice of the teacher's capacity for misconduct.

¶ 2    Plaintiff, Jane Doe, individually and as mother and next friend of Minor-Doe (the minor),

appeals the dismissal, with prejudice, of her claim of willful and wanton conduct against defendant

the Board of Education of Community Unit School District 300 (District) in count I of plaintiff's amended complaint. We agree with the trial court that the claim of willful and wanton conduct failed to state a cause of action. Therefore, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4       On March 4, 2024, plaintiff filed a six-count complaint against the District and Adam Faulkner. When the complaint was filed, the minor, a female, was 17 years old. The common allegations of the complaint were, in sum, that Faulkner, while employed by the District, engaged in misconduct toward the minor and other students in the District. Counts I, IV, and VI named the District. Count I alleged willful and wanton conduct and that the District breached its duties toward the minor in various respects.

¶ 5       On May 24, 2024, the District filed a combined motion to dismiss counts I, IV, and VI of the complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). As relevant here, the District argued that count I failed to plead a claim of willful and wanton conduct and that, in so far as count I stated a claim of ordinary negligence, it was barred by section 3-108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-108(a) (West 2022)) and section 24-24 of the School Code (105 ILCS 5/24-24 (West 2022)). The District argued, *inter alia*, that plaintiff did not properly allege that the District had notice of Faulkner's capacity for misconduct before he acted improperly toward the minor. Plaintiff did not respond to the motion.

¶ 6       On June 11, 2024, the trial court heard the District's motion. At the hearing, plaintiff made an oral motion to allow discovery that plaintiff claimed was needed to respond to the District's assertion that it lacked notice that Faulkner was a danger to students. The court denied plaintiff's

motion for discovery and, without ruling on the motion to dismiss, granted plaintiff leave to file an amended complaint.

¶ 7       On June 24, 2024, plaintiff filed a six-count amended complaint. Count I named the District and alleged willful and wanton conduct. Count II named Faulkner and alleged willful and wanton conduct. Count III named Faulkner and alleged a violation of federal law. Count IV named the District and alleged a violation of federal law. Count V named Faulkner and alleged intentional infliction of emotional distress. Finally, count VI named both the District and Faulkner and sought, under Illinois statutory authority, reimbursement of the minor's medical costs. Only count I is at issue on appeal.

¶ 8       According to the amended complaint's common allegations, the following occurred during the relevant time period of 2022 to 2023. The District owned and operated Hampshire High School (high school). The District "interviewed, selected, hired, trained, supervised, employed, controlled, and/or provided administrators, teachers, aides, and other personnel for [the high school]." Faulkner was "an employee, agent, and/or representative of [the District] and assigned as an aide or teacher for a sophomore biology class at [the high school]." The minor and two other female classmates, "[Classmate 1]" and "[Classmate 2]," were enrolled in the biology class. The District "placed [Faulkner] in charge of [the minor] to teach, supervise[,] and act *in loco parentis*."

¶ 9       Paragraphs 12-16 of the amended complaint alleged grooming behavior by Faulkner[1] and referenced a criminal prosecution against him:

"12. Based on the indictment by Kane County State's Attorney, beginning in approximately August 2022, [Faulkner] began grooming and/or engaging in grooming

---

[1]Plaintiff's original complaint did not allege grooming by Faulkner.

behavior towards three minor female students [the minor, Classmate 1, and Classmate 2] during class and/or in school, trying to ascertain their vulnerabilities for potential sexual activities.

13. Beginning in approximately August 2022, as part of the grooming behavior in paragraph 12, [Faulkner] sought to meet [Classmate 1] privately and without the supervision, knowledge[,] or consent of her parents.

14. Beginning in approximately August 2022, as part of the grooming behavior in paragraph 12, [Faulkner] demanded and/or directed [Classmate 1] to lie to her parents about her activities and whereabouts, deliberately done so he could meet [Classmate 1] privately and without the supervision, knowledge or consent of her parents.

15. Beginning in approximately August 2022, as part of the grooming behavior in paragraph 12, [Faulkner] harassed, intimidated, and/or threatened [Classmate 2] during class and/or in school, including threats to cause her bodily and emotional harm.

16. Beginning in approximately August 2022, and while engaging in the behavior in paragraphs 12-15, [Faulkner] continued to groom and/or probe [the minor's] vulnerabilities during biology class, still intending to engage in sexual activities with [the minor]."

¶ 10    Paragraph 17 alleged additional misconduct by Faulkner toward the minor:

"17. For at least two weeks during March 2023, during biology class, [Faulkner] made vile threats to [the minor] consisting of threats to harm and/or kill [the minor] and/or her family. On some days, this occurred multiple times in one day."

¶ 11    The common allegations concluded with paragraphs 18 and 19, which referred back to paragraphs 12 to 17:

"18. Regarding the behavior in paragraphs 12-17 occurring in class, at all times there was another teacher, employee, aide or staff member present in addition to [Faulkner], and this person was an agent and/or representative of [the District].

19. Regarding the behavior in paragraphs 12-17 occurring in biology class, this occurred more than occasionally, and in close proximity to [the District's] agent/representative identified in paragraph 18."

¶ 12 Plaintiff's allegations in count I began by stating that, during the relevant time, the District had duties to (1) supervise and protect students; (2) supervise and control teachers and aides; (3) "enforce and comply with its rules, guidelines, policies, and procedures"; (4) "employ and provide competent teachers and personnel, including but not limited to school leadership, administrators, staff, aides, and counselors"; and (5) "safeguard students such as [the minor] from harassment, intimidation, and threats."

¶ 13 Plaintiff proceeded to allegations of breach:

"26. [The District] willfully and wantonly breached the aforesaid duties because of one or more of the following:

a) permitted [the minor] to be groomed, harassed, intimidated, and threatened, violating Sections 2:265, 7:20, and 7:180 of [the District's] policies and Illinois' Educator Code of Ethics.

b) failing to supervise and protect [the minor].

c) failing to supervise and control [Faulkner].

d) failing to monitor [Faulkner's] compliance with (and preventing [Faulkner] from violating) employee-student boundaries, violating Section 5:120 of [the District's] policies.

e) failing to properly investigate [Faulkner's] grooming, harassment, intimidation, and threats of [*sic*] female students in the biology class.

f) failing to properly investigate [Faulkner's] sexual behavior with/toward female students in the biology class.

g) failing to properly report [Faulkner's] harassment, intimidation, and threats.

h) failing to properly report [Faulkner's] grooming and other behaviors which violated employee-student boundaries; and,

i) failing to enforce and comply with its rules, guidelines, policies & procedures."

¶ 14 Plaintiff alleged that "[t]he acts and omissions described herein *** were done with utter indifference to and/or conscious disregard for [the minor's] safety and well-being." The District was "vicariously liable for [Faulkner's] acts and omissions described herein."

¶ 15 Next, plaintiff included allegations about the District's knowledge of Faulkner's misconduct:

"29. Given the frequency with which it was occurring in biology class, as early as August 2022, and that it was occurring in proximity to one of [the District's] agents/representatives other than [Faulkner], [the District] knew, prior to March 2023, that [Faulkner] was grooming and/or engaging in grooming behavior towards [the minor], [Classmate 1], and [Classmate 2], trying to ascertain their vulnerabilities for potential sexual activities; yet, [the District] took no (or grossly inadequate) measures to prevent such behavior and protect [the minor].

30. In conjunction with paragraph 29, [the District] knew, prior to March 2023, that [Faulkner] would engage in threatening and manipulative behavior toward [the minor] in pursuit of sexual activity with her."

¶ 16 On July 11, 2024, plaintiff filed a written motion for discovery. The motion sought, *inter alia*, any records, data, and communications concerning Faulkner, including his personnel file and background checks. The motion also sought the names of all persons claiming to have potentially relevant information about the claims in the amended complaint and "the pending criminal case against [Faulkner]" (plaintiff attached a copy of an indictment filed against Faulkner in May 2023). Plaintiff claimed that the District "ha[d] virtually exclusive control" over evidence related to whether the District knew of Faulkner's misconduct.

¶ 17 On July 16, 2024, the District filed a combined motion to dismiss the three counts (I, IV, and VI) of the amended complaint that named the District. See 735 ILCS 5/2-619.1 (West 2022). As relevant here, the District argued that count I failed to state a claim of willful and wanton conduct because plaintiff did not specifically allege how Faulkner groomed or harassed the minor or how the District became aware of Faulkner's misconduct. The District further argued that, insofar as count I alleged ordinary negligence, it was barred under section 3-108(a) of the Tort Immunity Act (745 ILCS 10/3-108(a) (West 2022)) and section 24-24 of the School Code (105 ILCS 5/24-24 (West 2022)). Plaintiff did not respond to the motion.

¶ 18 On July 22, 2024, the District filed a response opposing plaintiff's July 11 motion for discovery.

¶ 19 On August 15, 2024, the trial court heard plaintiff's motion for discovery. The District argued that plaintiff was engaging in a "fishing expedition" by making conclusory allegations and then seeking discovery to flesh them out. The District also challenged plaintiff's allegation in the

discovery motion that the District had "exclusive control" of the evidence pertaining to the amended complaint's allegations. For instance, the District claimed that plaintiff had exclusive knowledge as to how specifically the minor was groomed.

¶ 20    The trial court denied plaintiff's motion for discovery. According to the court, plaintiff's "general discovery requests" were not aimed at enabling her to cure the deficiencies identified in the District's motion to dismiss, such as the failure to specify how Faulkner groomed the minor.

¶ 21    On October 24, 2024, plaintiff's counsel filed a freestanding affidavit noting that he had ordered the transcript of "the criminal trial against [Faulkner] ***, involving assertions of wrongdoing by Faulkner which are also a basis for the subject civil litigation." Counsel asked that plaintiff be given another opportunity to amend the complaint if the trial court found it deficient.

¶ 22    On October 25, 2024, the trial court heard the District's motion to dismiss. The District argued that plaintiff's conduct showed "a pattern of delay" in responding to the District's two motions to dismiss. Specifically, plaintiff responded to neither motion but instead sought further discovery. More recently, plaintiff filed an affidavit seeking an opportunity to further amend the complaint. The District argued that the transcript in Faulkner's criminal case had no bearing on this case and, in any event, Faulkner had been found not guilty on all counts. The District suggested that plaintiff was on yet another "fishing expedition to search for facts to state a claim which they simply haven't stated and, in order to state that claim, should have had those facts to begin with." The District asserted that, because plaintiff had failed to respond to the current motion to dismiss, any arguments in opposition were forfeited.

¶ 23    The District then argued the substance of its motion to dismiss. As relevant here, the District argued that plaintiff failed to state a claim of willful and wanton conduct. The District noted that many of the amended complaint's allegations pertained to the minor's two classmates,

who were not parties to the suit. In addition, the District argued that no detail was alleged regarding Faulkner's grooming of the minor, much less how the District became aware of Faulkner's alleged threats or grooming.

¶ 24 Plaintiff responded that the allegations in the amended complaint had to be taken as true and that they were sufficient to survive dismissal. Specifically, plaintiff argued that the allegations established a "pattern" of misconduct that occurred "in immediate proximity" to an agent of the District. According to plaintiff, "If this conduct is despicable and a teacher heard it and saw it going on and [did not] do anything about it, *** certainly one reasonable juror could conclude that's willful and wanton ***."

¶ 25 The trial court ruled as follows. The amended complaint read "more like a closing argument." "Grooming [was not] really defined," and the "generic" grooming allegation was based on an indictment—an improper way to plead. Further, the allegation that Faulkner's misconduct occurred "in the presence of somebody [fell] woefully short of knowledge or that this person actually knew." According to the court, it was "clear" that plaintiff "[did not] have any facts to sufficiently allege willful and wanton conduct."

¶ 26 The trial court did not enter a dismissal order immediately but continued the matter for status on the counts against Faulkner. On November 4, 2024, the court entered an order dismissing with prejudice counts I, IV, and VI of the amended complaint for failure to state a cause of action. The court declined to allow further amendment of the complaint, noting that plaintiff "would be in sole possession of any allegations supporting any purported cause of action against [the District]."

¶ 27 Plaintiff filed a timely motion to reconsider, which the trial court denied. Thereafter, the court granted defendant's motion to amend the November 4, 2024, order to add language under

Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) to allow an immediate appeal. This timely appeal followed.

¶ 28                                II. ANALYSIS

¶ 29    At issue on appeal is whether the trial court erred in dismissing count I for failure to state a cause of action.

¶ 30    The District's combined motion to dismiss under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2022)) included a motion to dismiss under section 2-615 of the Code (*id.* § 2-615) for failure to state a cause of action. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Consequently, we review *de novo* an order granting or denying a section 2-615 motion. *Id.*

¶ 31    In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Id.* In addition, we construe the complaint's allegations in the light most favorable to the plaintiff. *Id.* A cause of action should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Canel v. Topinka*, 212 Ill. 2d 311, 318 (2004). That said, our supreme court has repeatedly affirmed that Illinois is a fact-pleading jurisdiction. *Marshall*, 222 Ill. 2d at 429; *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40. Accordingly, "[w]hile the plaintiff is not required to set forth evidence in the complaint [citation], the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions." *Marshall*, 222 Ill. 2d at 429-30; see *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009) ("a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations").

¶ 32    Count I alleged that the District was vicariously liable for Faulkner's acts against the minor. In its motion to dismiss, the District cited section 3-108(a) of the Tort Immunity Act and section 24-24 of the School Code, both of which provide school districts with limited immunity for vicarious liability claims based on the acts of school employees. See *In re Estate of Stewart*, 2016 IL App (2d) 151117, ¶ 73. "Each of those sections provides immunity against negligent conduct but not against willful and wanton conduct." *Id.* Section 3-108(a) of the Tort Immunity Act states:

> "(a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury." 745 ILCS 10/3-108(a) (West 2022).

Section 24-24 of the School Code provides that "[i]n all matters relating to the discipline in and conduct of the schools and the school children, [school employees providing services for the children] stand in the relation of parents and guardians to the pupils." 105 ILCS 5/24-24 (West 2022). Under section 24-24, teachers have the same immunity that parents enjoy in relation to their children, which is immunity from liability for ordinary negligence but not willful and wanton conduct. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 388 (1998). When, as here, a school district's liability is premised on the acts of a school employee, section 24-24 confers immunity from ordinary negligence but not willful and wanton conduct. *Id.* at 389.

¶ 33    " 'Willful and wanton conduct' " is "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2022).

¶ 34 Our supreme court has explained that there is no separate, independent tort of willful and wanton conduct. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 19. Instead, willful and wanton conduct is considered to be an aggravated form of negligence. *Id.* A willful and wanton conduct claim requires a plaintiff to plead the basic elements of a negligence claim: that the defendant owed a duty to the plaintiff; that the defendant breached that duty; and that the breach was a proximate cause of the plaintiff's injury. *Id.* Thus, "[t]o sufficiently plead willful and wanton conduct, a plaintiff must allege not only duty, breach, and proximate cause [citation], but also that the defendant engaged in a course of action that showed a deliberate intention to harm or an utter indifference to or conscious disregard for the plaintiff's welfare." *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, 700 (2005).

¶ 35 A plaintiff alleging willful and wanton conduct must show the defendant's conduct through well-pleaded facts, and not by merely labeling the conduct willful and wanton. *Thurman v. Champaign Park District*, 2011 IL App (4th) 101024, ¶ 10. A qualitative difference necessarily exists between willful and wanton conduct and negligence; willful and wanton misconduct should shock the conscience. *Oravek v. Community School District 146*, 264 Ill. App. 3d 895, 900 (1994). Although the question of whether a defendant acted willfully and wantonly is generally a question of fact (*Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 236 (2007)), "the preliminary question of whether allegations of willful and wanton misconduct are sufficient to state a cause of action is a question of law to be determined by a court" (*Davis v. Village of Maywood*, 2023 IL App (1st) 211373, ¶ 28).

¶ 36 The main issue on appeal is whether count I adequately alleged—as was essential for plaintiff's vicarious liability claim—that the District had notice of Faulkner's capacity for misconduct in time to protect the minor. Plaintiff argues that it pleaded "sufficient facts that [the]

'District' knew that 'Faulkner' was harassing and threatening underage female students in biology class, including [the minor]."

¶ 37 We begin by reviewing the allegations in plaintiff's amended complaint, which contained "grooming" allegations that were not brought in the original complaint. As relevant here, plaintiff alleged that between 2022 and 2023, the District hired Faulkner and assigned him as an aide or teacher for a sophomore biology class. The students enrolled in the biology class included the minor, Classmate 1, and Classmate 2. Beginning in approximately August 2022, Faulkner engaged in "grooming behavior" toward the minor, Classmate 1, and Classmate 2. Further, "[f]or at least two weeks during March 2023, during biology class, [Faulkner] made vile threats to [the minor] consisting of threats to harm and/or kill [the minor] and/or her family. On some days this occurred multiple times in one day." At all times during the foregoing misconduct, "another teacher, employee, aide or staff member [was] present in addition to [Faulkner], and this person was an agent and/or representative of [the District]." Faulkner's misconduct "occurred more than occasionally, and in close proximity to [the District's] agent/representative."

¶ 38 On the issue of notice, plaintiff alleged that, "[g]iven the frequency with which it was occurring in biology class, as early as August 2022, and that it was occurring in proximity to one of [the District's] agents/representatives other than [Faulkner]," the District "knew" prior to March 2023 that Faulkner was "grooming and/or engaging in grooming behavior" toward the minor, Classmate 1, and Classmate 2. Relatedly, the District "knew, prior to March 2023, that [Faulkner] would engage in threatening and manipulative behavior toward [the minor] in pursuit of sexual activity with her."

¶ 39 Plaintiff has significantly limited the issues on appeal regarding notice. Plaintiff's opening brief focuses on Faulkner's alleged misconduct toward the minor during two weeks in March 2023.

Despite the trial court's finding that the allegations of grooming behavior that began in August 2022 were "generic" and insufficient, plaintiff's opening brief does not defend the sufficiency of those allegations. The District argues, therefore, that plaintiff has abandoned any reliance on the grooming allegations. In her reply brief, plaintiff acknowledges the District's abandonment claim and accuses the District of "conflat[ing] plaintiff's various claims into a single one arising from sexual grooming." However, instead of defending the sufficiency of the grooming allegations, plaintiff argues that she "need not establish [the] 'District's' notice of sexual grooming, or even that grooming occurred, since plaintiff has meritorious claims based on non-sexual, but vile, harassment, intimidation[,] and threats by [Faulkner], against [the minor], including threats to kill [the minor] and her family." We construe this as a voluntary relinquishment—in any event, a forfeiture—of any reliance on the grooming allegations. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in the opening brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 40    Critically, this abandonment hamstrings plaintiff's ability to argue that the amended complaint sufficiently alleged that the District knew of Faulkner's misconduct. Plaintiff has chosen to focus her appellate argument on the allegation that, during two weeks in March 2023, Faulkner "made vile threats to [the minor] consisting of threats to harm and/or kill [the minor] and/or her family." Plaintiff alleged that the District "knew, *prior to March 2023*" (emphasis added) that Faulkner would engage in misconduct toward the minor. However, the only basis the amended complaint alleged for the District's knowledge "prior to March 2023" was the alleged grooming behavior that began in August 2022. Thus, plaintiff has abandoned the very allegations that might have established that the District knew, before March 2023, of Faulkner's capacity for misconduct.

¶ 41    Even if plaintiff had not abandoned its reliance on the allegation that Faulkner committed misconduct beginning in August 2022, we would still conclude that count I failed to allege that the District had notice of Faulkner's capacity for misconduct. Plaintiff is correct that she only had to allege that the District had constructive notice, through an agent, of Faulkner's unfitness. See *Doe v. Dimovski*, 336 Ill. App. 3d 292, 297 (2003) (notice properly pleaded where the plaintiff alleged that she and her mother informed the school board's agents of the teacher's inappropriate conduct and that, thus, the school board had constructive notice). However, plaintiff failed to allege even constructive notice. She alleged that the misconduct beginning in August 2022 occurred in "close proximity" to "one of [the District's] agents/representatives other than [Faulkner]." We disagree with plaintiff that "this is sufficient evidence of constructive notice, imputed to [the District]." While it is well established that a principal is deemed to have constructive notice of facts known to the agent (see *Lombardo v. Reliance Elevator Co.*, 315 Ill. App. 3d 111, 120 (2000)), plaintiff did not allege that the District's agent knew of Faulkner's misconduct. Critically, plaintiff did not allege that the District's agent actually observed the misconduct. At the hearing on the motion to dismiss, plaintiff's counsel appeared to assume that, because Faulkner's misconduct occurred "in immediate proximity" (as counsel put it), the District's agent must have seen it. However, plaintiff's complaint did not elaborate on "close proximity"[2] (nor, for that matter, did plaintiff's counsel elaborate on "immediate proximity"). We cannot assume that the District's agent observed Faulkner's misconduct, absent a more definite idea of the distance and other pertinent circumstances. Thus, plaintiff's attempt to allege that the District had constructive notice

_____

[2]Although it appears in common usage, the term "close proximity" has been criticized as "a redundant and tautologically imprecise measurement." *Commonwealth v. Hanson*, 82 A.3d 1023, 1040 (Pa. 2013) (Eakin, J., dissenting).

of Faulkner's misconduct depends on vague and conclusory allegations, which are insufficient. See *Mitchell v. Norman James Construction Co.*, 291 Ill. App. 3d 927, 935 (1997) (conclusory allegations that the defendant " 'knew or should have known' " of a condition or an event, without allegations of specific facts as to how or why the defendant knew or should have known, were insufficient to state a claim of negligence).

¶ 42 Plaintiff relies heavily on the federal district court's statement in *Doe v. Board of Education of City of Chicago*, 611 F. Supp. 3d 516, 544 (N.D. Ill. 2020), that "[u]nlike Title IX,[3] ***, liability for willful and wanton misconduct under Illinois common law does *not* require actual notice of knowledge." (Emphasis in original.) That is, under Illinois law, "outright knowledge is not required; recklessness is enough." *Id.* We note first that we are not bound by federal court decisions interpreting Illinois law. *People v. Christian*, 2016 IL App (1st) 140030, ¶ 89. However, even accepting *Doe*'s interpretation of Illinois law, we cannot see how the case helps the District.

¶ 43 The *Doe* court referenced the following definition of willful and wanton conduct from Illinois case law:

"A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it *or* a failure to discover the danger through recklessness, or carelessness when it could have been discovered by ordinary care." (Emphasis added and internal quotation marks omitted.) *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 429 (1980).

---

[3]Title IX of the Education Amendments of 1972.(20 U.S.C. § 1681 *et seq.* (1972)).

The court construed the disjunctive ("or") to suggest that liability can rest upon *either* (1) "knowledge of impending danger" or (2) the "failure to discover the danger." (Emphasis omitted.) *Doe*, 611 F. Supp. 3d at 544. This distinction does not benefit plaintiff. "The plaintiff is bound, as [is] the trial court, by the allegations in [the] complaint." *Handzel v. Kane-Miller Corp.*, 244 Ill. App. 3d 244, 247 (1993). Plaintiff alleged that the misconduct that began in August 2022 and occurred in the presence of the District's agent was the exact source of the District's knowledge, before March 2023, of Faulkner's capacity for misconduct. Plaintiff alleged no other means by which the District could have "discovered" Faulkner's capacity for misconduct. Plaintiff is bound by those allegations, which, as explained, are insufficient to establish that the District had constructive notice of Faulkner's capacity for misconduct.

¶ 44    Similarly, the other cases cited by plaintiff do not aid her position. Plaintiff cites *Ward v. Community Unit School District No. 220*, 243 Ill. App. 3d 968, 974 (1993), for the proposition that "[a] statement of a defendant's knowledge is an allegation of ultimate fact and not a conclusion." That principle is closely associated with the proposition—which we acknowledged above—that "the plaintiff is not required to set forth evidence in the complaint" (*Marshall*, 222 Ill. 2d at 429). See *Board of Education of Kankakee School District No. 111 v. Kankakee Federation of Teachers Local No. 886*, 46 Ill. 2d 439, 446-47 (1970) ("But it is a rule of pleading long established, that a pleader is not required to set out his evidence. To the contrary, only the ultimate facts to be proved should be alleged and not the evidentiary facts tending to prove such ultimate facts."). While the supreme court has suggested that, at least in some contexts, knowledge is an ultimate fact, not a conclusion (see *Doner v. Phoenix Joint Stock Land Bank of Kansas City*, 381 Ill. 106, 115 (1942)), the court has also affirmed that a mere allegation of knowledge is insufficient (see *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 26 (agreeing with the defendant that "[the] plaintiff's

complaint [was] insufficient because it relie[d] on the 'conclusory allegation' that [the] defendant 'knew or should have known' of the dangers of secondhand asbestos exposure"). Moreover, the court has consistently affirmed that "the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions." *Marshall*, 222 Ill. 2d at 429-30. As noted, plaintiff chose to base her claim of willful and wanton conduct on the District's "*knowledge* of impending danger," not simply its "failure to discover the danger." (Emphasis added.) *Lynch*, 82 Ill. 2d at 429. Thus, plaintiff's theory was not that the District failed to "discover" Faulkner's unfitness when it should have, but that it became (constructively) aware of his unfitness—meaning, ultimately, that the District's agent did not fail to "discover" Faulkner's misconduct, but that the agent *actually* saw it. But, as explained, the allegation that Faulkner's misconduct occurred in unspecified "close proximity" to the District's agent did not establish that the agent observed the misconduct.

¶ 45    Plaintiff also implies that the allegations of knowledge in this case were comparable to those found sufficient in *Dimovski*. We disagree. In *Dimovski*, the plaintiff sued the school district where she had been a high school student for, *inter alia*, willful and wanton conduct. *Dimovski*, 336 Ill. App. 3d at 294. The plaintiff alleged that, from November 1998 through May 1999, while the plaintiff was under 18, a teacher at the high school engaged in an inappropriate sexual relationship with the plaintiff. *Id.* As in this case, the plaintiff in *Dimovski* alleged that the school district had prior notice of the teacher's capacity for misconduct yet did not take corrective action. *Id.* at 294-95. *Unlike* in this case, however, the plaintiff in *Dimovski* alleged that, before November 1998 (*i.e.*, before the teacher's improper conduct toward the plaintiff), a fellow student and her mother informed two "agent[s], servant[s], and employee[s]" of the board that the teacher had made inappropriate advances toward that fellow student. *Id.* at 294.

¶ 46　As potential bases for a theory of constructive notice, an allegation that a teacher's misconduct occurred in (undefined) "close proximity" to a school district's agent is not comparable to an allegation that the victim of the misconduct directly informed the agent of the misconduct. *Dimovski* does not support plaintiff.

¶ 47　In sum, because count I did not state a claim of willful and wanton conduct, the trial court was correct to dismiss that count under section 2-615 of the Code.

¶ 48　　　　　　　　　　　　　　III. CONCLUSION

¶ 49　For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 50　Affirmed.